**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-1976
_____

UNITED STATES OF AMERICA

v.

MICHAEL CARABALLO,

                                                    Appellant

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Criminal No. 3-17-cr-00277-001)
District Judge: Honorable Robert D. Mariani
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
May 17, 2023

Before: SHWARTZ, MONTGOMERY-REEVES, and
ROTH, *Circuit Judges*.

(Filed: December 8, 2023)

Gino A. Bartolai, Jr.
238 William Street
Pittston, PA 18640
    *Counsel for Appellant*

Gerard M. Karam
Robert J. O'Hara
Office of the United States Attorney
235 N Washington Avenue
P.O. Box 309, Suite 311
Scranton, PA 18503
    *Counsel for Appellee*

_____

OPINION OF THE COURT
_____

MONTGOMERY-REEVES, *Circuit Judge.*

    Michael Caraballo appeals his sentence for an aggravated assault. Caraballo challenges the District Court's finding that the injuries sustained by Caraballo's victim amounted to serious bodily injury rather than bodily injury under the United States Sentencing Guidelines (the "Guidelines"). This finding resulted in a higher guideline range for Caraballo, which Caraballo contends led to the District Court erroneously imposing a lengthier sentence for his role in the aggravated assault. Because the phrase serious bodily injury as used in the relevant guideline is ambiguous, we turn to the Sentencing Commission's interpretation of the phrase in the commentary to the Guidelines. And we hold that the reasonableness, character, and context of the Sentencing Commission's interpretation entitles it to controlling weight.

Applying the commentary definition, we hold that the District Court did not commit clear error by concluding that the victim's injuries constituted serious bodily injury rather than bodily injury. Thus, we will affirm.

## I.    BACKGROUND

On February 6, 2017, Caraballo and his co-defendant, both inmates at the United States Penitentiary at Canaan ("USP Canaan"), assaulted a third inmate ("P.R.") in the prison gymnasium. Caraballo struck and attempted to strike P.R. with a five-inch metal shank. After the assault, medical personnel at USP Canaan assessed P.R. and transferred him to the emergency room of a local hospital. P.R. stayed in the emergency room overnight and was released the next day. He suffered "a number of puncture wounds to his chest, forearm, [and] triceps area," a fractured mandible, and abrasions to his forehead, upper jaw, and left knee.[1]

In connection with the attack on P.R., on September 4, 2020, Caraballo pleaded guilty to assault with a dangerous weapon, aiding and abetting, and possessing contraband in prison in violation of 18 U.S.C. § 113(a)(2)–(3) and 18 U.S.C. § 1791(a)(2). After Caraballo entered his guilty plea, a U.S. Probation Officer prepared a Presentence Investigation Report

[1] App. 38. During the sentencing hearing, Caraballo's counsel referred to medical records in the case "disclosed during discovery" that are not included in the record before us. App. 56. The Government stated that P.R. also had trouble breathing and speculated that this could be due to one of the "three stab wounds, particularly, one to the chest, underarm area, which probably caused the difficulty breathing." App. 58.

(the "Report") for Caraballo. Using the Guidelines, the Probation Officer calculated Caraballo's total offense level as 20. The total offense level included a five-level sentencing enhancement under Section 2A2.2(b)(3)(B) of the Guidelines due to a finding that P.R. sustained serious bodily injury. Based on a total offense level of 20 and Caraballo's criminal history category of V, the Probation Officer calculated a Guidelines range of 63 to 78 months.

Caraballo made several objections to the Report, including to the five-level sentencing enhancement under Section 2A2.2(b)(3)(B) for causing serious bodily injury. At Caraballo's May 12, 2022 sentencing hearing, the District Court overruled the objection to the five-level enhancement:

> As [the Government] has pointed out, [P.R.] was stabbed three times, once in the anterior chest, which is an injury that's difficult for me to characterize as just bodily injury rather than serious injury, and in addition to that, he had a broken jaw.
>
> Now, the case law that I've looked at, for example, [*United States v. Snider*, 976 F.2d 1249, 1251 (9th Cir. 1992)], holds that a broken jaw is serious bodily injury under the applicable guideline of [2A2.2(b)(3)(B)], and I'm inclined to agree with that case and the others that I've looked at that what happened here is that [P.R.] had

4

inflicted upon him serious bodily injury.

It's hard for me to look past the fact that a shank was used, in connection with this injury, it's hard for me to look past the fact one of the stab wounds was to the anterior chest, which, I think, everyone would agree, to the extent that there's a penetration of that area of the body, you are, at least, exposing the victim to the prospect of serious bodily injury or death.

And as far as what was actually sustained here, there's no question that, beyond the bruises and cuts, there were puncture wounds, three, and a broken jaw, so, again, while I respect your argument, I think that the facts support a finding that the Probation Office's assessment that there was serious bodily injury here is correct. And on that basis, I'll have to overrule your objection.

App. 59–60.

After ruling on Caraballo's various objections to the Report, the District Court noted for the record that the

5

Guidelines range for imprisonment purposes was 63 to 78 months. The District Court then considered the various 18 U.S.C. § 3553(a) sentencing factors and determined that Caraballo should be sentenced on the low end of the range, or 63 months. The District Court entered the judgment on May 13, 2022. This timely appeal followed.

## II. JURISDICTION & STANDARD OF REVIEW

The District Court had subject-matter jurisdiction over this case pursuant to 18 U.S.C. § 3231. This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

Two different standards of review are applicable to this appeal.[2] First, we exercise plenary review over legal questions, including the interpretation of the Guidelines. *See, e.g.*, *United States v. Poulson*, 871 F.3d 261, 270 (3d Cir. 2017) (collecting cases); *United States v. Nasir*, 17 F.4th 459, 468 (3d Cir. 2021) (en banc) (citing *United States v. Wilson*, 880 F.3d 80, 83 (3d Cir. 2018)). Thus, we exercise plenary review over the meaning of the phrase serious bodily injury in the relevant guideline.

Plenary review requires us to review the question anew without giving deference to the District Court's assessment or

---

[2] As a general matter, a third standard of review could also be applicable, because we review a district court's factual findings for clear error. *United States v. Kirschner*, 995 F.3d 327, 333 (3d Cir. 2021) (citing *United States v. Grier*, 475 F.3d 556, 570 (3d Cir. 2007)). But here neither party challenges the District Court's factual findings; thus, this standard of review is not implicated.

interpretation. *See, e.g.*, *Kengerski v. Harper*, 6 F.4th 531, 536 (3d Cir. 2021) ("Our review on appeal is plenary, which means we review each element anew."); *Metromedia Energy, Inc. v. Enserch Energy Servs., Inc.*, 409 F.3d 574, 579 (3d Cir. 2005) ("Thus, we owe no deference to the District Court's analysis, and instead we exercise plenary review over the District Court's decision . . ..").

Second, the standard of review for the District Court's application of the Guidelines to the facts "depends on the nature of the question presented." *Buford v. United States*, 532 U.S. 59, 63 (2001) (quoting *Koon v. United States*, 518 U.S. 81, 98 (1996)). "[A] more deferential standard of review is appropriate where, as here, we consider a district court's application of the Guidelines to a specific set of facts, that is, where the district court determined whether the facts 'fit' within what the Guidelines prescribe." *United States v. Richards*, 674 F.3d 215, 219 (3d Cir. 2012). "[W]hen the legal issue involves 'a "strictly factual test," such that once the test is stated no legal reasoning is necessary to the resolution of the issue,'" the determination should be reviewed for clear error. *Id.* at 221 (quoting *United States v. Brown*, 631 F.3d 638, 644 (3d Cir. 2011)); *see also, e.g.*, *United States v. Perez-Colon*, 62 F.4th 805, 812 (3d Cir. 2023) ("Finally, like in *Richards* 'our role is more appropriately described as determining whether the District Court clearly erred in its determination that the facts fit within the meaning of [the relevant Guideline], rather than whether it abused its discretion by adopting one set of factual findings instead of another.'" (quoting *Richards*, 674 F.3d at 223)). The question presented here is whether the victim suffered bodily injury or serious bodily injury based on how P.R.'s injuries fit within the meaning of those terms in the

Guidelines. Therefore, the standard of review for the District Court's application of the Guidelines to the facts is clear error.

"We find clear error if, when reviewing the entire record, we are 'left with the definite and firm conviction that a mistake has been committed.'" *United States v. Napolitan*, 762 F.3d 297, 307 (3d Cir. 2014) (quoting *United States v. Kulick*, 629 F.3d 165, 168 (3d Cir. 2010)). "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. Bessemer City*, 470 U.S. 564, 573–74 (1985).

## III. DISCUSSION

Appellate review of a criminal sentence is, at the broadest level, a two-step process. First, the appellate court must ensure that the district court made no significant procedural errors, and second, assuming no significant procedural errors occurred, the appellate court must consider the sentence's substantive reasonableness. *Gall v. United States*, 552 U.S. 38, 49–51 (2007). Failure to properly calculate the Guidelines range constitutes a significant procedural error. *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1904 (2018) (quoting *Peugh v. United States*, 569 U.S. 530, 537 (2013)); *Gall*, 552 U.S. at 51.

Caraballo challenges his sentence on a single ground: the District Court failed to properly calculate his Guidelines range by applying a serious bodily injury sentencing enhancement rather than a bodily injury enhancement. To

8

determine whether the District Court erred, we consider the District Court's finding that P.R.'s injuries constituted serious bodily injury rather than bodily injury under the Guidelines. Both Caraballo and the Government recite the definitions of bodily injury and serious bodily injury found in the commentary of the Guidelines, but Caraballo argues that instead of relying on the definitions in the commentary, we should give "bodily injury" and "serious bodily injury" their "ordinary and contemporary common meaning." Appellant Br. 10. And based on the ordinary and contemporary common meaning, Caraballo argues that the District Court erred by concluding that the injuries suffered by P.R. constitute serious bodily injury rather than bodily injury.

Prior to 2019, "[c]ommentary interpreting or explaining a specific guideline '[was] authoritative unless it violate[d] the Constitution or a federal statute, or [was] inconsistent with, or a plainly erroneous reading of, that guideline.'" *United States v. Metro*, 882 F.3d 431, 437 (3d Cir. 2018) (quoting *Stinson v. United States*, 508 U.S. 36, 38 (1993)). This authority stemmed from the interaction between the *Stinson* rule, whereby the Sentencing Commission's commentary interpreting the Guidelines (the "Commentary") is treated as the equivalent of an agency's interpretive rules, and *Auer* deference, whereby "controlling weight [was given] to an agency's interpretation of its own regulation unless the interpretation was 'plainly erroneous or inconsistent with the regulation.'" *United States v. Adair*, 38 F.4th 341, 348 (3d Cir. 2022) (quoting *Stinson*, 508 U.S. at 47).

In *Kisor v. Wilkie*, 139 S. Ct. 2400 (2019), however, the Supreme Court "reprised *Auer* deference." *Adair*, 38 F.4th at 348. This Court addressed the effect of this reprisal on the

9

deference due to the Commentary in *United States v. Nasir*, 17 F.4th 459 (3d Cir. 2021) (en banc), and expanded this discussion in *Adair*.  In *Nasir*, this Court explained that "[i]n short, the degree of deference to be given an agency's interpretation of its own regulations[, including the Commentary,] is now context dependent."  17 F.4th at 471. Thus, courts must apply "the *Kisor* process" to determine whether they can defer to definitions in the Commentary.  *Id.* at 460–72; *Adair*, 38 F.4th at 349.  In *Nasir* and *Adair*, this Court explained the *Kisor* process as:  (1) exhaust all the traditional tools of construction to conclude whether a guideline is genuinely ambiguous by examining the text, structure, purpose, and history of the guideline in question; then, if the guideline *is* genuinely ambiguous, (2) determine whether the Sentencing Commission's interpretation is reasonable, meaning that based on the text, structure, purpose, and history of the Guideline the Sentencing Commission's interpretation falls within the outer bounds of permissible interpretation; and finally, if the interpretation is reasonable, (3) make an independent inquiry into whether the character and context of the Sentencing Commission's interpretation entitles it to controlling weight by considering whether the interpretation (a) is the Sentencing Commission's official position, (b) in some way implicates the Sentencing Commission's substantive expertise, and (c) reflects the Sentencing Commission's fair and considered judgment and is not simply a convenient litigating position.  *Nasir*, 17 F.4th at 471; *Adair*, 38 F.4th at 348–49; *see also Kisor*, 139 S. Ct. at 2415–17.

There is only one guideline at issue in this case: Section 2A2.2, the guideline for aggravated assault, which lists a base offense level of fourteen and then seven enhancement

10

categories, only one of which is relevant here. Section 2A2.2(b)(3) requires an increase in the offense level "[i]f the victim sustained bodily injury . . . according to the seriousness of the injury[.]" U.S. Sent'g Guidelines Manual § 2A2.2(b)(3) (U.S. Sent'g Comm'n 2021). Section 2A2.2(b)(3) has a chart listing five degrees of bodily injury and the commensurate sentencing enhancement for each. There are three main degrees of injury ("bodily injury," "serious bodily injury," and "permanent or life-threatening bodily injury") and two categories giving instructions for increases if the bodily injury falls between the main degrees. *Id.* For example, "If the degree of injury is between . . . [bodily injury] and [serious bodily injury], add 4 levels[.]" *Id.*

Under *Kisor*, we first conduct a "genuine-ambiguity analysis using the traditional tools of construction to examine the text, structure, purpose and history" of Section 2A2.2(b)(3). *Adair*, 38 F.4th at 350. A sentencing guideline is genuinely ambiguous if it is "susceptible to more than one reasonable reading." *See Kisor*, 139 S. Ct. at 2410. The text, structure, history, and purpose of Section 2A2.2(b)(3) show that serious bodily injury is susceptible to more than one reasonable reading and therefore is genuinely ambiguous.

We start with the plain text and presume that words carry their ordinary meaning. *See United States v. Banks*, 55 F.4th 246, 256–57 (3d Cir. 2022); *United States v. Lewis*, 58 F.4th 764, 769 (3d Cir. 2023) ("The phrase 'controlled substance' is undefined by the Guidelines, so we begin with its ordinary meaning."). "To ascertain the ordinary meaning of words, '[w]e refer to standard reference works such as legal and general dictionaries.'" *Da Silva v. Att'y Gen. United States*, 948 F.3d 629, 635 (3d Cir. 2020) (alteration in original)

(quoting *United States v. Geiser*, 527 F.3d 288, 294 (3d Cir. 2008)). This Court routinely relies on *Black's Law Dictionary*, *Oxford English Dictionary*, and *Webster's Dictionary* when interpreting the Guidelines. *E.g.*, *United States v. Simmons*, 69 F.4th 91, 95 (3d Cir. 2023); *United States v. Dawson*, 32 F.4th 254, 261 (3d Cir. 2022); *United States v. Stinson*, 734 F.3d 180, 184 (3d Cir. 2013). *Black's Law Dictionary* is the only contemporary dictionary that defines serious bodily injury as a complete phrase, so we start with *Black's*. *See Dawson*, 32 F.4th at 262 ("*Black's Law Dictionary* [is] persuasive here, as it provides definitions of the salient terms in the precise, relevant context[.]").

At the time Section 2A2.2(b)(3)(B) was drafted, *Black's Law Dictionary* defined the phrase serious bodily injury as a "bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." *Injury*, Black's Law Dictionary (5th ed. 1979). This definition captures three distinct descriptions of injury, two of which are expressly encompassed in the seven-point enhancement for "[p]ermanent or [l]ife-[t]hreatening [b]odily [i]njury." U.S. Sent'g Guidelines Manual § 2A2.2(b)(3)(C) (U.S. Sent'g Comm'n 2021). If we adopted *Black's* definition, bodily injury that involves a "substantial risk of death" or results in "permanent disfigurement" would fall into both the five- and seven-point enhancements, rendering the seven-point enhancements meaningless in violation of the anti-surplusage cannon. *See United States v. Jackson*, 964 F.3d 197, 203 (3d Cir. 2020) (stating that the anti-surplusage canon counsels us to "give effect, if possible, to every clause and word" of a statute or regulation (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001))). As a result, *Black's* definition of the phrase does

not resolve the question of what Section 2A2.2(b)(3) means by serious bodily injury.

We must therefore look at the definitions of the phrase's constituent parts. *See, e.g.*, *Sandifer v. U.S. Steel Corp.*, 571 U.S. 220, 227–32 (2014) (analyzing each part of the term "changing clothes"). The meanings of "bodily" and "injury" are not in dispute, but contemporary dictionaries define "serious" in many ways. One dictionary defines it as "causing anxiety," *Serious*, American Heritage Dictionary (2d ed. 1985), another as "caus[ing] considerable distress, anxiety, or inconvenience," *Serious*, Webster's Third New International Dictionary (1986), while yet another defines it as "having . . . dangerous possible consequences," *Serious*, Webster's Ninth New Collegiate Dictionary (1985).[3] A fourth dictionary defines serious in medical terms as "having unstable or otherwise abnormal vital signs and other unfavorable indicators." *Serious*, Random House Dictionary of the English Language (2d ed. 1987). These varying definitions of serious show that the phrase serious bodily injury could mean a bodily injury causing considerable distress, anxiety, or inconvenience or a bodily injury causing unstable or otherwise abnormal vital signs or other unfavorable indicators. As both of these readings are reasonable, but not necessarily mutually

---

[3] Other dictionary definitions use some combination of these definitions. *See Serious*, Oxford English Dictionary (2d ed. 1989) ("Attended with danger; giving cause for anxiety."); *Serious*, Webster's New Universal Unabridged Dictionary (2d ed. 1983) ("[G]iving cause for anxiety; critical; dangerous; alarming.").

inclusive,[4] the text supports the conclusion that serious bodily injury is subject to more than one reasonable reading.

Section 2A2.2(b)(3)'s structure and history do not narrow the reasonable readings to one. Section 2A2.2(b)(3) sets forth a sliding scale of enhancements "according to the seriousness of the [victim's] injury": three levels for "Bodily Injury," four levels if the "degree of injury is between" "Bodily Injury" and "Serious Bodily Injury," five levels for "Serious Bodily Injury," six levels if the "degree of injury is between" "Serious Bodily Injury" and "Permanent or Life-Threatening Bodily Injury," and seven levels for "Permanent or Life-Threatening Bodily Injury." U.S. Sent'g Guidelines Manual § 2A2.2(b)(3) (U.S. Sent'g Comm'n 2021). Section 2A2.2 lacks definitions of these terms, so the various gradients along the sliding scale lack clear boundaries. The only difference, for example, between bodily injury and serious bodily injury is the word serious, which, as discussed above, has many different meanings. Indeed, in 1989, the drafters recognized the ambiguity in the sliding scale by amending Section 2A2.2(b)(3) to add undefined intermediary enhancements to fill the gaps between the three defined categories of injuries. *See* U.S. Sent'g Guidelines Manual § 2A2.2(b)(3)(D), (E) (U.S. Sent'g Comm'n 1989). The structure and history of Section 2A2.2(b)(3) thus support a determination that the phrase serious bodily injury is genuinely ambiguous.

---

[4] For example, a bodily injury causing abnormal vital signs will not necessarily cause considerable distress, anxiety, or inconvenience.

14

According to the background commentary,[5] the purpose of Section 2A2.2 is to recognize that some felonious assaults "are more serious than other assaults because of the presence of an aggravating factor," like causing a victim to suffer serious bodily injury, and that commensurate punishment is warranted. U.S. Sent'g Guidelines Manual § 2A2.2 cmt. background (U.S. Sent'g Comm'n 2021). To effectuate that purpose, the Sentencing Commission set forth the sliding scale under which defendants whose victims sustain more severe injuries face greater punishment. While the purpose of Section 2A2.2 does not resolve the plain meaning of serious bodily injury, it shows that the phrase is meant to capture the results of conduct that caused more than bodily injury and less than permanent or life-threatening injury. Thus, like the text, structure, and history, Section 2A2.2's purpose does not enable us to identify just one reasonable interpretation of the phrase serious bodily injury.

Because the traditional tools of statutory interpretation do not reveal a single reasonable definition of the phrase serious bodily injury, we hold that the phrase is genuinely ambiguous. We therefore proceed to step two of the *Kisor* analysis and consider whether the Commentary's definition of the phrase is "reasonable." *Kisor*, 139 S. Ct. at 2415 (quoting *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 515 (1994)). On this question, *Kisor* instructs us to return to the guideline's "text, structure, history, and so forth" to determine if the

---

[5] We can consider the background commentary from the Guidelines without going through the *Kisor* process. *See Adair*, 38 F.4th at 347–48 ("The paradigm applies only to the Commission's interpretive commentary, not its commentary related to either background information or circumstances that may warrant a departure from a guideline.").

15

Commentary's definition of serious bodily injury falls within the "outer bounds of permissible interpretation." *Id.* at 2416.

With this in mind, we must identify the outer limits of reasonable interpretation of the phrase serious bodily injury. On one end of the range, the phrase means a bodily injury resulting in "anxiety." *Serious*, American Heritage Dictionary (2d ed. 1982). On the other end of the range, the phrase means a bodily injury with "dangerous possible consequences," *Serious*, Webster's Ninth New Collegiate Dictionary (1985), but that is not quite "permanent or life-threatening" because such bodily injury is covered by the separate, seven-level enhancement, U.S. Sent'g Guidelines Manual § 2A2.2(b)(3)(C) (U.S. Sent'g Comm'n 2021).

The Commentary's definition falls squarely within this range. The Commentary defines "[s]erious bodily injury," in relevant part, as:

> [An] injury involving extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation.

U.S. Sent'g Guidelines Manual § 1B1.1 cmt. n.1(M) (U.S. Sent'g Comm'n 2021). Each part of this definition reasonably falls within the outer bounds described above. As to the first clause, bodily injury involving extreme physical pain or protracted impairment can provoke anxiety but also has dangerous possible consequences that are not permanent or

16

life-threatening. The second clause in the Commentary's definition regarding medical intervention is also consistent with the range of reasonable interpretations. Bodily injury requiring surgery, hospitalization, or physical rehabilitation can cause anxiety but also has dangerous possible consequences because surgery and hospitalization are themselves such consequences. Therefore, the Commentary's definition is reasonable.

Not only is the interpretation reasonable but the "character and context" of the Commentary support giving the Commentary's definition "controlling weight." *Kisor*, 139 S. Ct. at 2416 (citing *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 155 (2012)); *see also United States v. Perez*, 5 F.4th 390, 396 (3d Cir. 2021). First, the Commentary's definition is the Sentencing Commission's official position and not merely an ad hoc pronouncement. *Kisor*, 139 S. Ct. at 2416. Second, it implicates the Sentencing Commission's substantive expertise. *See id.* at 2417; *United States v. Mercado*, 81 F.4th 352, 359–60 (3d Cir. 2023). As discussed above, Section 2A2.2(b)(3) sets forth a sliding scale of sentencing enhancements that account for the seriousness of the victim's injury. One of the three principal purposes of the Sentencing Commission is to "establish sentencing policies and practices for the federal courts, including guidelines to be consulted regarding the appropriate form and severity of punishment for offenders convicted of federal crimes[.]" *About*, United States Sentencing Commission, https://www.ussc.gov/about-page (last visited Dec. 5, 2023). The Guidelines "are core to [the Sentencing Commission's] mission" and

17

provide federal judges with fair and consistent sentencing ranges to consult at sentencing by:

- incorporating the purposes of sentencing (*i.e.*, just punishment, deterrence, incapacitation, and rehabilitation);

- providing certainty and fairness in meeting the purposes of sentencing by avoiding unwarranted disparity among offenders with similar characteristics convicted of similar criminal conduct, while permitting sufficient judicial flexibility to take into account relevant aggravating and mitigating factors; and

- reflecting, to the extent practicable, advancement in the knowledge of human behavior as it relates to the criminal justice process.

*U.S. Sentencing Commission's 2022 Annual Report*, United States Sentencing Commission, https://www.ussc.gov/about/annual-report-2022 (last visited Dec. 5, 2023). What impact the type and severity of injuries sustained by victims should have on a sentence is thus "squarely within the Sentencing Commission's 'bailiwick.'" *Mercado*, 81 F.4th at 359 (quoting *Nasir*, 17 F.4th at 471).

18

Third and finally, the definition was not instituted for any post hoc purpose but has been included in the Commentary since 1987, and therefore reflects the Sentencing Commission's "fair and considered judgment." *Kisor*, 139 S. Ct. at 2417 (quoting *Christopher*, 567 U.S. at 155). As the Commentary's definition of serious bodily injury satisfies *Kisor*, it is entitled to deference.

The District Court concluded that the serious bodily injury enhancement under Section 2A2.2(b)(3)(B) applied. The District Court found that P.R. "was stabbed three times, once in the anterior chest" and "had a broken jaw." App. 59. The District Court based its finding that these injuries constituted serious bodily injury on (1) the fact that P.R. suffered a stab wound to the chest caused by a five-inch metal shank and (2) caselaw that found that a broken jaw constituted serious bodily injury. The District Court considered all the injuries together and found that collectively they constituted serious bodily injury.

The District Court's conclusion was not clearly erroneous. The record shows that P.R.'s injuries consisted of puncture wounds to three areas of his body from the shank, including a puncture wound to the anterior chest, and a fractured jaw. The record does not specify what type of treatment P.R. required or how severe the documented injuries were, which does leave room for speculation, but the finding that P.R.'s injuries when taken together amount to serious bodily injury is plausible based on the entire record. When reviewing the entire record, we are not left with the definite and firm conviction that a mistake has been committed by applying the serious bodily injury enhancement rather than one of the lower bodily injury enhancements considering the

totality of P.R.'s injuries. Therefore, the District Court's finding that P.R. suffered serious bodily injury does not constitute clear error.

## IV.    CONCLUSION

For the reasons discussed above, we will affirm the District Court's judgment.