**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 19-1497, 19-2500, 19-2535
_____

UNITED STATES OF AMERICA

v.

BRANDON SEGERS, a/k/a "B",
Appellant in 19-1497

BRAHEIM BALLARD, a/k/a "BIG FELLOW", a/k/a "BIG HOMIE",
Appellant in 19-2500

HASAN CHANEY, a/k/a "HAS", a/k/a "BIG HAS",
Appellant in 19-2535
_____

On Appeal from the United States District Court for the
Eastern District of Pennsylvania

(D.C. Crim. Nos. 2-15-cr-00180-007, 2-15-cr-00180-009, 2-15-cr-00180-016)

Chief District Judge: Honorable Mitchell S. Goldberg
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
March 5, 2024
_____

Before: SHWARTZ, RENDELL, and AMBRO, *Circuit Judges*

(Filed: August 28, 2024)

_____

O P I N I O N*

_____

**RENDELL**, *Circuit Judge.*

Braheim Ballard, Hasan Chaney, and Brandon Segers appeal from their convictions for their participation in a robbery ring. The appellants raise various issues, contending that (1) the jury selection process violated their Sixth Amendment rights and the Jury Selection and Service Act of 1968, 28 U.S.C. §§ 1861 *et seq.*; (2) contacts between the District Court's law clerk and the Government's case agent during and after the trial offended the appellants' due process rights; (3) the Government presented insufficient evidence of Chaney's guilt on Count 22 for kidnapping; (4) the Government failed to prove a single conspiracy as charged in Count 1, which prejudiced Ballard; (5) the District Court abused its discretion in limiting the scope of cross-examination with respect to three of the Government's cooperating witnesses; and (6) the District Court committed plain error in applying offense-level enhancements to appellants Ballard and Chaney based on injuries suffered by their victims. We find each of these arguments unpersuasive and will affirm the District Court's judgment.

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

## I[1]

This appeal stems from a years-long series of home invasions, robberies, and kidnappings. A federal grand jury returned a 17-count indictment charging Ballard, Chaney, Segers, and multiple other defendants not at issue here with violations of 18 U.S.C. §§ 924(c), 1951, and 2119 and 21 U.S.C. § 841(a)(1). A federal grand jury subsequently returned a 30-count superseding indictment adding still more defendants.

Due to the large number of defendants, the case was split into trial phases. Phase I, presided over by the Honorable Mitchell S. Goldberg (the "Phase I Judge")—which did not include Ballard, Chaney, or Segers—resulted in guilty verdicts against each of the five defendants tried in that phase. Phase II included each of the appellants in this case and was presided over by the Honorable Wendy Beetlestone (the "Phase II Judge").

The Phase II jury returned a mixed verdict, finding Ballard not guilty on Counts 1 (conspiracy) and 16 (carjacking), but guilty on Count 15 (Hobbs Act robbery); Chaney not guilty on Counts 11 and 25 (carjacking), but guilty on Count 22 (kidnapping); and Segers not guilty on Count 1 (conspiracy), but guilty on Count 8 (attempted Hobbs Act robbery). The jury deadlocked on several additional robbery and carjacking counts.

Chaney filed a post-verdict motion, as did Ballard, whose motion Segers joined. After the Phase I Judge denied those motions, the Phase I Judge sentenced each of the appellants. Ballard, Chaney, and Segers each filed appeals, which were consolidated for disposition.

---

[1] We write primarily for the parties, and so we recite only the facts necessary to decide the case.

II[2]

A

Ballard, Chaney, and Segers each argue that the jury selection procedure used by the Phase II Judge violated their Sixth Amendment rights and the Jury Selection and Service Act of 1968, 28 U.S.C. §§ 1861 *et seq*. (the "JSSA").[3]

The District Court, in a thorough and careful analysis, summarized the Phase II Judge's jury selection procedure and correctly determined that this procedure did not violate the Sixth Amendment or the JSSA. "In order to establish a prima facie violation of the fair cross section requirement of the Sixth Amendment and the Act, the defendant must demonstrate: (1) the group alleged to be excluded is a distinctive group in the community; (2) the representation of this group in jury venires is not fair and reasonable in relation to the number of such persons in the community; and (3) the underrepresentation is caused by the systematic exclusion of the group in the jury selection process." *United States v. Weaver*, 267 F.3d 231, 237 (3d Cir. 2001) (internal quotation marks omitted) (quoting *Duren v. Missouri*, 439 U.S. 357, 364 (1979)). The appellants fail to satisfy the second prong because they have offered no evidence to "demonstrate the percentage of the community made up of the group alleged to be underrepresented," *Weaver*, 267 F.3d at 240, and they fail to satisfy the third prong because they have nothing from which we can

---

[2] The District Court had subject matter jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

[3] We review *de novo* whether a defendant has been denied his right to a jury selected from a fair cross section of the community. *See United States v. Weaver*, 267 F.3d 231, 235 (3d Cir. 2001).

infer that underrepresentation was "inherent in the particular jury-selection process utilized." *Duren*, 439 U.S. at 366. Accordingly, the appellants have not made out a prima facie case for a Sixth Amendment violation.

Nor did the voir dire process violate the JSSA, which provides that potential jurors shall not be excused or excluded from jury service for any reason other than those specified in the Act. *See United States v. Calabrese*, 942 F.2d 218, 222 (3d Cir. 1991). As the District Court noted, the process employed here did not exclude or excuse potential jurors who answered affirmatively to any specific questions; it merely began the individual voir dire examinations with those potential jurors who had answered affirmatively between one and five general questions spanning a range of topics. *See Waldorf v. Shuta,* 3 F.3d 705, 710 (3d Cir. 1993) ("[T]he method of conducting the voir dire is left to the sound discretion of the district court."). Others remained in the pool of potential jurors and could have been examined and included on the jury, if needed. While it is true that "the trial judge's broad discretion [regarding the impaneling process] is not without limitation," the process here did not transgress any "'essential demands of fairness.'" *United States. v. Salamone*, 800 F.2d 1216, 1224 (3d Cir. 1986) (quoting *Aldridge v. United States*, 283 U.S. 308, 310 (1931)). Accordingly, the appellants do not succeed with their Sixth Amendment and JSSA arguments.

B

Each appellant argues that a new trial is warranted because of interactions between the Phase II Judge's law clerk and the Government's case agent.[4] We agree with the District Court that there was no due process violation or conduct that warranted a new trial.

The District Court based its careful analysis of this issue on the findings of fact made by the Honorable Jerome B. Simandle of the United States District Court for the District of New Jersey, who was appointed to do so by the then–Chief Judge of this Circuit.

Federal Rule of Criminal Procedure 33 provides that a district court "may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). In analyzing whether a new trial was required, the District Court properly considered whether any constitutional due process violations occurred or whether the federal recusal statute necessitated relief. The Due Process Clause requires recusal where there is "an impermissible risk of actual bias." *Williams v. Pennsylvania*, 579 U.S. 1, 8 (2016). The recusal statute provides that "[a]ny . . . judge . . . of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). We have noted that "there must be a more compelling standard for recusal under § 455(a) after the conclusion of a trial than before its inception." *Martin v. Monumental Life Ins. Co.*, 240 F.3d 223, 237 (3d Cir. 2001). When there has already been a lengthy judicial proceeding, and the court has invested significant

---

[4] "The standard of review on a motion for a new trial is abuse of discretion, except where a district court bases its denial of the motion on an application of law, in which case an appellate court's review is plenary." *McKenna v. City of Phila.*, 582 F.3d 447, 460 (3d Cir. 2009).

resources without a showing of any prejudice, a post-hoc motion for recusal "should be supported by substantial justification, not fanciful illusion." *Id.*

Following an evidentiary hearing, Judge Simandle credited the law clerk's testimony that he did not attempt to influence the Phase II Judge based on his interactions with the agent and that he never disclosed non-public information to the agent. The appellants do not dispute these factual findings. As the District Court concluded, the contacts complained of were ill-advised but minimal and, because of the division of work between the Phase I and Phase II courts, with the Phase I Judge receiving post-trial matters upon the Phase II Judge's recusal, along with the fact that the contacts largely occurred after the Phase II trial, no bias resulted.

We thus agree that no new trial was warranted under the circumstances.

C

Chaney contends that the District Court erred in denying his motion for judgment of acquittal or, in the alternative, for a new trial based on the insufficiency of the evidence for the jury to convict him of kidnapping, and aiding and abetting, as charged in Count 22.[5] Specifically, Chaney argues that a cooperating witness, Marcus Bowens, perjured himself as he testified regarding Chaney's involvement.

---

[5] When reviewing a motion for judgment of acquittal, we "review the record in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilt[ ] beyond a reasonable doubt based on the available evidence." *United States v. Brodie*, 403 F.3d 123, 133 (3d Cir. 2005) (internal quotation marks omitted) (quoting *United States v. Smith*, 294 F.3d 473, 476 (3d Cir. 2002)). As for the motion for a new trial, we review for abuse of discretion, but such "motions are not favored and should be granted sparingly and only in exceptional cases." *United States v. Silveus*, 542 F.3d 993, 1005 (3d Cir. 2008).

The federal kidnapping statute applies to a person who "unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person" when the offender uses "any means, facility, or instrumentality of interstate or foreign commerce in committing or in furtherance of the commission of the offense." 18 U.S.C. § 1201(a)(1). To prove that a defendant is guilty of aiding and abetting, the Government must establish that the "defendant associated himself with the venture, that he participated in it as something he wished to bring about, and that he sought by his words or actions to make it succeed." *United States v. Xavier*, 2 F.3d 1281, 1288 (3d Cir. 1993). The requisite intent can be shown with evidence of the defendant encouraging or helping the perpetrator. *Id.*

Chaney's arguments do not withstand the applicable, challenging standards of review. As the District Court reasoned, Chaney's co-conspirator, Bowens, testified at trial that Chaney was involved in the kidnapping, and the testimony was corroborated by a video of the crime, cell site location data of some co-conspirators (not including Chaney) showing them in the area at the time of the kidnapping, and call detail records of certain conspirators from the time of the kidnapping.

Viewing the evidence in the light most favorable to the Government, a rational juror could have concluded that Chaney was involved in the kidnapping, and there is no serious risk of an erroneous conviction. *See United States v. Brodie*, 403 F.3d 123, 133–34 (3d Cir. 2005); *United States v. Silveus*, 542 F.3d 993, 1004–05 (3d Cir. 2008). The District Court aptly characterized any differences in Bowens's testimony between Phase I and Phase II as "minor details," *Ballard*, 2018 WL 6252604, at *8, which fall far short of the perjury that

8

Chaney alleges. *Cf. United States v. Dunnigan*, 507 U.S. 87, 94 (1993) ("A witness testifying under oath or affirmation violates th[e federal perjury] statute if she gives false testimony concerning a *material matter* with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." (emphasis added)).

The District Court thus did not err in denying Chaney's motion for judgment of acquittal, or for a new trial, on Count 22.

D

Ballard argues that his conviction on Count 15 must be vacated because the evidence presented at trial showed multiple conspiracies, rather than the single conspiracy charged in the indictment.[6]

"A conviction must be vacated when (1) there is a variance between the indictment and the proof presented at trial and (2) the variance prejudices a substantial right of the defendant." *United States. v. Kelly*, 892 F.2d 255, 258 (3d Cir. 1989). However, "[a] variance does not prejudice a defendant's substantial rights (1) if the indictment sufficiently informs the defendant of the charges against him so that he may prepare his defense and not be misled or surprised at trial, [or] (2) if the variance is not such that it will present a danger that the defendant may be prosecuted a second time for the same offense." *United States v. Daraio*, 445 F.3d 253, 262 (3d Cir. 2006) (quoting *United States v. Schoenhut*, 576 F.2d 1010, 1021–22 (3d Cir. 1978)). Ballard does not

---

[6] We need not decide whether Ballard preserved this argument because his claim fails under even the more appellant-friendly plenary review standard. *See United States v. Vosburgh*, 602 F.3d 512, 531 (3d Cir. 2010) (noting that the standard of review is plenary where such variance claims are preserved and plain error where they are not).

allege that he was unable to prepare a defense or was surprised at trial, nor does he allege any facts that he is in danger of being prosecuted a second time for the offenses charged here. Thus, it is unnecessary to vacate his conviction.

Ballard cites to *Kotteakos v. United States*, 328 U.S. 750, 775 (1946), to argue that, due to the conspiracy charge, he and the other defendants were "tried en masse for the conglomeration of distinct and separate offenses committed by others." He contends that this caused prejudice through a "spillover" effect where incriminating evidence against other co-defendants involved in separate conspiracies affected the jury's consideration of the evidence against Ballard himself. *See United States v. Kemp*, 500 F.3d 257, 291 (3d Cir. 2007). This case does not present such prejudicial "spillover." *Kotteakos* is distinguishable because there the appellants were in fact convicted on the single general conspiracy count after the trial court gave an obviously erroneous jury instruction on the charge. *Kotteakos*, 328 U.S. at 752, 767–68. Here, Ballard does not argue that the trial court erred in its instructions, and the jury not only found Ballard not guilty of the conspiracy charge, but also apparently assessed the evidence against each defendant on each charge separately, convicting on some counts and acquitting or deadlocking on others.

Ballard thus shows no error regarding his conviction on Count 15.

## E

Chaney next contends that the District Court abused its discretion in limiting his cross-examination of three Government witnesses.[7]

The District Court appropriately concluded that the Phase II Judge acted within her discretion in limiting the scope of the cross-examination of witnesses. Witnesses Daniel Hayes and Michael Queen were extensively examined on direct and cross-examination about issues concerning their credibility and bias and were at times subject to cross-examination by three defense attorneys. Thus, the Phase II Judge did not abuse her discretion when invoking Federal Rule of Evidence 403 to limit defense counsels' inquiries into the details of uncharged robberies in which the witnesses had participated.

Chaney more specifically urges that he should have been permitted to show one witness, Charles Wardlaw, a video of another co-operating witness, Louis Miller, involved in a shooting incident that was unrelated to the charges in the case, for the purpose of demonstrating that Miller was a violent person. The District Court correctly concluded that such extrinsic evidence was appropriately excluded under Federal Rule of Evidence 608(b).

We thus find no abuse of discretion in the Phase II Judge's evidentiary rulings as to the permissible scope of the cross-examinations at issue.

---

[7] We generally review the District Court's evidentiary rulings for abuse of discretion. *United States v. Green*, 617 F.3d 233, 239 (3d Cir. 2010). A district court abuses its discretion if its ruling is "arbitrary, fanciful or clearly unreasonable," such that "no reasonable person would adopt the district court's view." *United States v. Starnes*, 583 F.3d 196, 214 (3d Cir. 2009) (quoting *Ansell v. Green Acres Contracting Co.*, 347 F.3d 515, 519 (3d Cir. 2003)).

F

Ballard challenges the sentencing enhancement that was applied in calculating the guidelines range for his sentence. He asserts that the District Court should have only applied a three-level increase for the victim's "bodily injury" under USSG § 2B3.1(b)(3)(D), instead of a four-level increase for "serious bodily injury" under USSG § 2B3.1(b)(3)(B). This argument, too, fails.[8]

The victim of the home invasion robbery for which Ballard was convicted suffered injuries when his assailants beat him on the head with a gun and thrust his head into a toilet. The resulting injuries included a severe laceration to his head, bruises to the face, and a concussion. Ballard argues that the District Court erred in basing its decision on the general mistreatment of the victim rather than his injuries, and that the victim's injuries do not constitute a "serious bodily injury."

A "serious bodily injury" is an "injury involving extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation." USSG § 1B1.1 cmt. n.1(M).[9] Ballard correctly notes that courts must consider the nature of

---

[8] We review the District Court's factual determination that a victim's injury was serious for clear error. *United States v. Grier*, 475 F.3d 556, 570 (3d Cir. 2007) (en banc). "A finding is clearly erroneous when[,] although there is evidence to support it, the reviewing [body] on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id.* (quoting *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal.*, 508 U.S. 602, 622 (1993)) (internal quotation marks omitted).

[9] Because the phrase "serious bodily injury" is ambiguous, *United States v. Caraballo*, 88 F.4th 239, 245–46 (3d Cir. 2023), the District Court appropriately considered the Application Note to USSG § 2B3.1 when interpreting this phrase.

a victim's resulting injury when determining the application of these sentencing enhancements. *United States v. Harris*, 44 F.3d 1206, 1217–18 (3d Cir. 1995).

Ballard faults the District Court for statements it made as to the conduct that led to the at-issue injuries. At sentencing, the District Court noted that "I don't think[] I should view the twelve staples in isolation, I think, I have to view the twelve staples and being hit in the head with a gun in conjunction with his head being put into a toilet, him being bound and gagged." Joint Appendix ("J.A.") 3439. That statement, however, does not change the outcome under clear error review. The injuries clearly fall within the Guideline definition: the victim's injuries required hospitalization for a few hours and a surgical procedure in the form of eight to twelve staples to the head. *Cf. United States v. Corbin*, 972 F.2d 271, 272 (9th Cir. 1992) (holding that the district court did not err in finding that a victim who was struck on the head with a metal object and required over 25 sutures had suffered serious bodily injury).

We thus have no conviction that a mistake was committed by the District Court, and we perceive no clear error in applying the enhancement for serious bodily injury.

G

Similarly, Chaney urges that the District Court committed plain error where it applied a four-level sentencing enhancement pursuant to USSG § 2A4.1(b)(2)(A), which provides for a sentencing increase where the victim sustained "permanent or life-threatening bodily injury."[10] Chaney posits that the District Court should have applied a two-level enhancement

---

[10] Because the phrase "permanent or life-threatening bodily injury" is not genuinely ambiguous, it is unnecessary to consider the application note to USSG § 2A4.1.

13

under USSG § 2A4.1(b)(2)(B) because the victim sustained only "serious bodily injury." The district court's finding was not clearly erroneous.

During the kidnapping for which Chaney was convicted, the assailants punched the victim in the head and ribs, beat him in the stomach with a metal belt buckle, poured hot water on his genitals, and waterboarded him. The kidnapping victim testified that after the men had left, he went directly to a hospital, where his burns, broken nose, broken ribs, and headaches were treated.

Here, the District Court focused on whether the victim's injuries involved a substantial risk of death rather than a risk of permanent injury or disfigurement. The Court determined that, "all viewed together," the "near drowning" associated with waterboarding and "the initial kick to the head[,] . . . the injuries such as the broken facial bones[,] . . . and the bruised lung and numerous facial contusions" created a basis for applying the four-level enhancement. Chaney Appendix ("Chaney App.") at 103. The Court also emphasized that the kidnapping victim's head, face, and lung injuries all affected a "vital area," while waterboarding involves "simulating drowning." Chaney App. at 103.

Like Ballard, Chaney contends that the Court erred by "stray[ing] to consider conduct that while certainly offensive did not cause any injury to the victim." Chaney Br. at 26. But injuries like those suffered here have been found by courts to qualify as a "life-threatening bodily injury." *See, e.g., United States v. Baggett*, 342 F.3d 536, 538–40 (6th Cir. 2003) (agreeing with finding of "permanent or life-threatening bodily injury" where victim experienced a fractured finger, cracked tooth, substantial contusions and bruises, and spatial

14

disorientation resulting from punching, kicking, and choking). In conjunction with the District Court's observations that the injuries were suffered to vital areas of the victim's body, we cannot conclude the District Court committed clear error in applying the increase.

Chaney's argument that the injuries suffered by the kidnapping victim were more akin to a significant bodily injury than life-threatening bodily injury is unavailing. Chaney directs us to "[e]xamples of the injuries that qualify as serious but not permanent or life-threatening bodily injury." Chaney Br. at 26. However, the out-of-circuit cases cited by Chaney do not support a different conclusion, as such cases reviewed whether the district court clearly erred in applying a "serious bodily injury" enhancement or a "bodily injury" enhancement rather than lesser enhancements or no enhancement at all; that is, none of these cases reviewed whether the district court erred in applying a "life-threatening bodily injury" enhancement. *See* USSG § 2A4.1(b)(2); Chaney Br. at 26–27 (citing *United States v. Moore*, 997 F.2d 30, 37 (5th Cir. 1993); *Corbin*, 972 F.2d at 272; *United States v. Slow Bear*, 943 F.2d 836, 837–38 (8th Cir. 1991); *United States v. Johnson-Dix*, 54 F.3d 1295, 1312–13 (7th Cir. 1995); *United States v. Bogan*, 267 F.3d 614, 624 (7th Cir. 2001); *United States v. Wilson*, 686 F.3d 868, 873–74 (8th Cir. 2012); *United States v. Hoelzer*, 183 F.3d 880, 882 (8th Cir. 1999)). Thus, we do not find the cited cases useful comparators and conclude that the District Court did not clearly err in applying the four-level sentencing enhancement.

## III

In sum, the appellants fail on each of their multiple claims. We commend the District Court for its thorough analyses of the arguments presented by the appellants and will affirm its judgments.