**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 22-1947
_____

UNITED STATES OF AMERICA

v.

LUIS D. MERCADO,
                              Appellant

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D. C. No. 1-21-cr-00337-001)
District Judge: Sylvia H. Rambo

_____

Argued on June 29, 2023

Before: JORDAN, KRAUSE and SMITH, *Circuit Judges*

(Opinion filed: August 29, 2023)

Ronald A. Krauss, Esq.
Jason F. Ullman, Esq.                **[ARGUED]**
Office of Federal Public Defender
100 Chestnut Street
Suite 306
Harrisburg, PA 17101


                    *Counsel for Appellant*


Christian T. Haugsby, Esq.           **[ARGUED]**
Paul J. Miovas, Jr., Esq.
Carlo D. Marchioli, Esq.
Office of United States Attorney
Middle District of Pennsylvania

1501 N 6th Street, 2nd Floor
P.O. Box 202
Harrisburg, PA 17102

*Counsel for Appellee*

––––––––––––––––––

OPINION

––––––––––––––––––

KRAUSE*, Circuit Judge*.

Actions speak louder than words. So when a defendant continues to engage in criminal activity following a guilty plea, that post-plea conduct may bear on whether he has genuinely accepted responsibility for his crime of conviction. In this case, Appellant Luis Mercado asks us to conclude precisely the opposite. He asserts that § 3E1.1(a) of the Sentencing Guidelines, which permits a district court to reduce a defendant's sentence if he can "clearly demonstrate[] acceptance of responsibility for his offense," U.S.S.G. § 3E1.1(a), unambiguously precludes a district court from considering post-plea conduct "unrelated" to that pled-out offense. Opening Br. 7.

Yet the plain text of § 3E1.1(a) contains no such limiting principle. Instead, the commentary to this provision sets forth a list of "appropriate considerations," several of which expressly sweep in post-plea conduct. U.S.S.G. § 3E1.1 cmt. n.1(A)–(H). And where, as here, commentary helps to clarify a Guideline's "genuinely ambiguous" text, that commentary may serve as an authoritative delimiting mechanism, provided that it is both "reasonable" and invokes the Sentencing Commission's "substantive experience." *United States v. Nasir*, 17 F.4th 459, 471 (3d Cir. 2021) (en banc). For the reasons explained below, the commentary to § 3E1.1(a) satisfies these criteria, and the District Court did not clearly err in relying on Mercado's post-plea misconduct to deny his request for a § 3E1.1(a) reduction. We will therefore affirm.

2

## I.    Background

For a full year starting in August 2020, Mercado filed fraudulent Pandemic Unemployment Assistance claims on a weekly basis, collecting a total of $37,555 in fraudulent benefits. When the Government caught on a few months later, it opened discussions with Mercado, who waived indictment and entered into an agreement to plead guilty to an Information the Government filed the same day, charging him with wire fraud in violation of 18 U.S.C. § 1343. Among other things, that plea agreement endorsed the possibility of a downward adjustment under § 3E1.1(a) if Mercado could "adequately demonstrate recognition and affirmative acceptance of responsibility [for his offense]." App. 28–29.

Mercado entered his guilty plea a few weeks later. At the plea hearing, Mercado "apologize[d] for what [he had] done," *id.* at 57, and the District Court continued his bail pending sentencing, including several conditions of bail relevant to this appeal. Specifically, the District Court required, in relevant part, that Mercado "refrain from use or unlawful possession of a narcotic drug or other controlled substance"; "submit to substance abuse testing"; "complete a substance abuse evaluation and treatment if deemed appropriate by pretrial services"; and "get medical and psychiatric treatment if directed by pretrial services." *Id.* at 58.

Mercado's compliance proved problematic from the start. On the same day he pleaded guilty, Mercado tested positive for cocaine. Probation referred him for intensive outpatient treatment, but he never reported for his counseling sessions and was terminated without having completed the program. In January 2022, Mercado admitted to using cocaine again, and two months later, he refused to take a follow-up drug test. When he finally submitted to testing in April, he again tested positive.

In its Presentence Investigation Report, the Probation Office calculated an offense level of 11 and a Criminal History Category of II, resulting in an applicable Guideline range of 10 to 16 months' imprisonment. A two-point downward adjustment for acceptance of responsibility under § 3E1.1(a) would have produced a Guideline range of 6 to 12 months'

imprisonment. But the Probation Office recommended against it. While the Probation Office recognized that Mercado had expressed remorse for committing the instant offense, it concluded that he had not clearly demonstrated acceptance of responsibility for the offense in view of his post-plea conduct, including cocaine use and failure to complete substance abuse treatment.

In response to Mercado's objection, the Probation Office also issued an addendum, adhering to its original recommendation. Relying largely on the commentary to § 3E1.1(a), the addendum explained that a defendant who enters a guilty plea is not entitled to an adjustment based on acceptance of responsibility as a matter of right, *see* U.S.S.G. § 3E1.1 cmt. n.3, and that courts can consider a defendant's "voluntary termination or withdrawal from criminal conduct or associations," *id.* cmt. n.1(B), and "post-offensive rehabilitative efforts," *id.* cmt. n.1(G), in determining whether a defendant qualifies for a reduction for acceptance of responsibility.

The District Court held a sentencing hearing in May 2022. When given the opportunity to address the Court, Mercado again expressed remorse for his actions:

> I want to apologize for what I've done first. Right now I have motive for life to continue living . . . . I have a new partner, a new friend, and I want to give everything that I can to her. I have a good job. . . . And I want to work hard to get out of this darkness if I can get a chance to do that. Something else, I watch out for my mother. My sister and myself are the ones that are in charge of taking care of my mother. I know I can do it, and I trust in God that I can do it if I have the opportunity.

App. 61. The District Court, however, was not persuaded and declined the two-point adjustment. By way of reasoning, the Court referred to the "ongoing episode" of Mercado's drug use and referenced a memo from Mercado's Probation Officer confirming Mercado's most recent positive drug test. *Id.* at 60. Ultimately, the Court sentenced Mercado to the bottom of the

4

applicable range, 10 months' imprisonment, and strongly recommended that he receive all available drug treatment while incarcerated. Mercado now brings this timely appeal.

## II.    Discussion[1]

Mercado raises only one argument on appeal: that the District Court erred by denying him a § 3E1.1(a) adjustment based on the "irrelevant post-plea conduct" of his continued drug use. Opening Br. 2. According to Mercado, the operative language of § 3E1.1(a)—requiring a defendant to "clearly demonstrate[] acceptance of responsibility for his offense"—unambiguously precludes a district court from considering such conduct. The Government, on the other hand, contends this language is genuinely ambiguous, enabling courts to consult the list of "appropriate considerations" in the commentary, including "voluntary termination or withdrawal from criminal conduct or associations," U.S.S.G. § 3E1.1 cmt. n.1(B), and "post-offense rehabilitative efforts (*e.g.*, counseling or drug treatment)," *id.* cmt. n.1(G).[2]

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291. We review the District Court's interpretation of the Sentencing Guidelines de novo, *United States v. Adair*, 38 F.4th 341, 347 (3d Cir. 2022), and we review its "determination of whether the defendant is entitled to an acceptance of responsibility . . . for clear error," *United States v. Harris*, 751 F.3d 123, 126 (3d Cir. 2014).

[2] In full, that non-exhaustive list of considerations covers: "(A) truthfully admitting the conduct comprising the offense(s) of conviction, and truthfully admitting or not falsely denying any additional relevant conduct for which the defendant is accountable under § 1B1.3 (Relevant Conduct). . . . ; (B) voluntary termination or withdrawal from criminal conduct or associations; (C) voluntary payment of restitution prior to adjudication of guilt; (D) voluntary surrender to authorities promptly after commission of the offense; (E) voluntary assistance to authorities in the recovery of the fruits and instrumentalities of the offense; (F) voluntary resignation from the office or position held during the commission of the offense; (G) post-offense rehabilitative efforts (*e.g.*, counseling or drug treatment); and (H) the timeliness of the defendant's

5

To resolve that question, we apply the three-step framework set forth in *United States v. Nasir*, 17 F.4th 459 (3d Cir. 2021) (en banc). First, we ask whether a Guideline provision is "genuinely ambiguous" by "carefully consider[ing] the [Guideline's] text, structure, history, and purpose." *Id.* at 471 (quoting *Kisor v. Wilkie*, 139 S. Ct. 2400, 2415 (2019)). If the Guideline itself is unambiguous, our inquiry is at an end, and we simply disregard the commentary. *Id.* If the Guideline is instead ambiguous, we proceed to step two and consider whether the corresponding commentary is "reasonable," *i.e.*, within "the outer bounds of permissible interpretation," *id.*, but we "accord the commentary no weight" when it "expands the definition" of a term within the text of the Guidelines, *United States v. Banks*, 55 F.4th 246, 258 (3d Cir. 2022). At the third step, if the commentary reasonably interprets an ambiguous provision, we ask "whether the character and context of the agency interpretation entitles it to controlling weight." *Nasir*, 17 F.4th at 471. In other words, we afford that interpretation so-called *Auer* deference only if it "implicate[s] [the Commission's] substantive expertise" and "reflect[s] fair and considered judgment." *Id.* (citations omitted). We consider § 3E1.1(a) at each step below.

A.     The Guideline Is Genuinely Ambiguous

To discern if a Guideline is "genuinely ambiguous," *id.*, we look to contemporary "dictionary definitions while keeping in mind the whole statutory text, the purpose, and context of the statute, and relevant precedent," *United States v. Brow*, 62 F.4th 114, 120 (3d Cir. 2023) (citation omitted); *Adair*, 38 F.4th at 348, 350; *Banks*, 55 F.4th at 257.

1.     Text and Dictionary Definitions

Section 3E1.1(a) authorizes a downward adjustment when a defendant has "clearly demonstrate[d] acceptance of responsibility for his offense." U.S.S.G. § 3E1.1(a). The parties here largely agree on the applicable definition for each individual word in that text. They agree, in other words, that a defendant satisfies his burden under § 3E1.1(a) if he can "show clearly" by "evidence" that he "t[ook] . . . with a consenting

conduct in manifesting the acceptance of responsibility." U.S.S.G. § 3E1.1 cmt. n.1(A)–(H).

mind" "moral, legal, or mental accountability" for his "infraction of law," as reflected by his "contrition, remorse, and ownership of action."[3] Answering Br. 14–15, 21; Opening Br. 12, 18–19.

From there, however, they part ways. Mercado contends this language "unambiguously delineates the conduct that the defendant must 'clearly' acknowledge and accept responsibility for: conduct that violated the statute for which he is being sentenced," Opening Br. 20, which precludes a district court from considering "unrelated" post-plea criminal conduct, *id.* at 8. The Government, by contrast, homes in on the term "demonstrates" and the need to show accountability "clearly" and by "evidence." Answering Br. 15–16. The ordinary meaning of "demonstrates," it contends, does not tell us *how* a defendant can make this showing or what evidence is relevant, and nothing else in the text clarifies that nebulous burden.

The Government has it right. Mercado's reading fails to grapple with the possibility that demonstrating one's acceptance of responsibility for a particular offense might include refraining from additional criminal activity. More importantly, Mercado fails to explain why § 3E1.1(a) unambiguously forecloses such a reading. He would have us prohibit a district court from considering anything beyond a defendant's words of remorse at a plea or sentencing hearing, yet offers no reason, textual or otherwise, why we should draw that arbitrary line. The dictionary definitions on which he relies suggest we should not. As Mercado notes, "to demonstrate" means "to show clearly," Opening Br. 18, yet to "show" means to "to reveal by one's condition, nature, *or*

---

[3] Mercado largely draws his definitions from WEBSTER'S NEW TWENTIETH CENTURY DICTIONARY (2d ed. 1979) and WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY (9th ed. 1985). The Government draws nearly all definitions from WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (2002). Given that the final relevant amendment to § 3E1.1(a) occurred in 1992, to the extent there is a discrepancy, Mercado's contemporaneous definitions control. But again, given the overall consensus, the meaning of each individual word has little impact on our analysis.

*behavior*," WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 1091 (1988) (emphasis added). So whether a person has "demonstrated" acceptance of responsibility turns on both words and deeds. It is not limited—let alone "unambiguously" limited—to verbal expressions of remorse.

As a fallback, Mercado also urges that even if a district court may consider some post-plea conduct, it cannot consider post-plea conduct that is "irrelevant," Opening Br. 2, or "unrelated" to "the offense of conviction," *id*. at 13, because the demonstration of acceptance must be "for his offense," U.S.S.G. § 3E1.1(a). But those words cannot bear the weight he would place on them. The phrase "for his offense" merely specifies the crime for which a defendant is accepting responsibility—not the conduct by which he demonstrates that acceptance. The text, in other words, references two temporally distinct sets of conduct. First is the conduct encapsulated by the term "his offense," which, we agree with Mercado, means the conduct underlying the offense of conviction and for which the district court is sentencing the defendant. But the district court must also determine—based on evidence of the defendant's post-offense words and conduct—whether the defendant is genuinely remorseful for having committed that offense. And it is in ascertaining what conduct constitutes evidence of remorse that textual ambiguity arises. Put differently, the fact that the defendant is seeking an acceptance-of-responsibility reduction in the sentence he receives "for his offense" does not eliminate the ambiguity in how he evinces acceptance.

### 2. Other Tools of Statutory Interpretation

*Nasir* instructs that we deploy all tools of statutory interpretation to determine ambiguity, including purpose, history, and precedent. 17 F.4th at 471. In some cases that may warrant an exhaustive review. *See, e.g.*, *Adair*, 38 F.4th at 348. But here, where the text and context of the Guideline make ambiguity patent, these other tools are of limited utility.

As for purpose, Mercado asserts only that a singular reference to "legitimate societal interests" in § 3E1.1(a)'s background section makes his reading unambiguously correct. Opening Br. 20. To be sure, encouraging a guilty plea via a

8

sentence reduction furthers certain legitimate societal interests, *see, e.g.*, *Minnick v. Mississippi*, 498 U.S. 146, 167 (1990) (Scalia, J., dissenting), but so does withholding a reduction for continued criminal activity, U.S.S.G. § 3E1.1 cmt. background. In any event, the background section also states that "a defendant . . . clearly demonstrates acceptance of responsibility for his offense by taking, in a timely fashion, the actions listed above (or some equivalent action)," *id.*, and those actions include the "voluntary termination or withdrawal from criminal conduct or associations," *id.* cmt. n.1(B), and "post-offense rehabilitative efforts (*e.g.*, counseling or drug treatment)," *id.* cmt. n.1(G).

The Guideline's history also does little to move the ball. Mercado accurately recounts its historical progression from requiring acceptance of responsibility for "the offense of conviction" in its initial iteration, U.S.S.G. § 3E1.1 (1987), then for "his criminal conduct" in 1988, *see* U.S.S.G. § 3E1.1 amd. 46 (Jan. 15, 1988), and finally, in 1992, "for his offense*,*" *see* U.S.S.G. § 3E1.1 amd. 459 (1992). But those amendments were to the terminology for the offense conduct for which the defendant was sentenced and required to show remorse; the phrase "clearly demonstrates" was left unchanged, providing no additional insight into how the defendant goes about showing that remorse.

The 1992 amendment, moreover, revised § 3E1.1(a)'s Application Note 3 in two ways that suggest the Commission considered unrelated post-offense conduct to be relevant. For one, it specified that evidence of acceptance included not only "admitting the conduct comprising the offense of conviction," but also "additional relevant conduct for which he is accountable under § 1B1.3." *Id.* For another, it recognized that evidence of acceptance could be "outweighed by conduct of the defendant that is inconsistent with such acceptance of

9

responsibility." *Id.* Thus, § 3E1.1(a)'s history also supports a finding of ambiguity.[4]

So does our precedent. Before *Nasir*, we tackled this very issue in *United States v. Ceccarani*, 98 F.3d 126 (3d Cir. 1996), and while *Ceccarani* no longer controls, its underlying reasoning remains valid. In holding that § 3E1.1(a) did not "preclude[] consideration of unrelated criminal conduct in the acceptance of responsibility determination," we explained that "the language of § 3E1.1 . . . is very general," and given that ambiguity, we relied heavily on the commentary, which expressly swept in post-plea criminal conduct and did "not specify that the appropriate considerations include only conduct related to the charged offense." *Id.* at 130.

That reasoning is consistent with the pre- and post-*Kisor* conclusions of every other circuit—with the lone exception of the Sixth—that "[e]ven unrelated criminal conduct may make an acceptance of responsibility reduction inappropriate," *United States v. Cooper*, 998 F.3d 806, 811 (8th Cir. 2021) (alteration in original) (citation omitted), and that "post-offense conduct may be highly relevant to whether a defendant sincerely accepted responsibility for his crime," *United States v. McCarthy*, 32 F.4th 59, 64 (1st Cir. 2022), with our sister circuits often expressly noting that "Guideline § 3E1.1 does not preclude the sentencing judge . . . from considering unlawful conduct unrelated to the offense of conviction," *Cooper*, 998 F.3d at 811 (citation omitted). *See United States v. Strange*, 65 F.4th 86, 92 (2d Cir. 2023) (similar); *United States v. Hinojosa-Almance*, 977 F.3d 407, 411 (5th Cir. 2020) (similar); *United States v. Tuttle*, 63 F.4th

---

[4] In *United States v. Murillo*, we observed that "[o]rdinarily, all 'relevant conduct' [as defined in § 1B1.3(a)] should be considered," but we depart from that presumption if a particular Guideline provides an "explicit instruction which mandates a departure," such as the use of "offense of conviction." 933 F.2d 195, 198–199 (3d Cir. 1991). Here, in contrast, the commentary tells us to consider (1) "any *additional* relevant conduct," and (2) "conduct . . . that is inconsistent with such acceptance of responsibility." U.S.S.G. § 3E1.1 cmt. n.3 (emphasis added).

10

673, 675–77 (8th Cir. 2023) (similar); *United States v. Finnesy*, 953 F.3d 675, 702 (10th Cir. 2020) (similar).[5]

In sum, the text of § 3E1.1(a) is ambiguous, and the purpose, history, and precedent relating to the Guideline only confirm that ambiguity.

### B.     Reasonableness of the Commentary

We need not tarry on the question of whether the Commission's interpretation in the commentary is "reasonable," *Nasir*, 17 F.4th at 471, as Mercado does not dispute it, and with good reason.

For commentary to be reasonable, it must not "improperly expand[] the Guideline," *Banks*, 55 F.4th at 253, and must remain within "the outer bounds of permissible interpretation," *Nasir*, 17 F.4th at 471 (citation omitted). We explained in *Ceccarani* why § 3E1.1(a)'s commentary meets that test: the enumerated factors "bear on an important aspect of any criminal sentence—the defendant's genuine feeling of remorse and his or her rehabilitation efforts," and "[c]ontinual criminal activity, even differing in nature from the convicted offense, is inconsistent with an acceptance of responsibility and an interest in rehabilitation." 98 F.3d at 130. As the Government aptly puts it, the commentary merely "provides a non-exhaustive list of factors that may demonstrate whether a defendant has demonstrated the level of contrition, remorse, and ownership of action necessary to clearly demonstrate acceptance of responsibility for his offense." Answering Br. 21 (emphasis removed). And if we start from the position that the text puts no bounds on how to clearly demonstrate

---

[5] *See also United States v. O'Neil,* 936 F.2d 599, 600–01 (1st Cir.1991); *United States v. Chu*, 714 F.3d 742, 747–48 (2d Cir. 2013); *United States v. Watkins,* 911 F.2d 983, 985 (5th Cir.1990); *United States v. McDonald,* 22 F.3d 139, 143–44 (7th Cir.1994); *United States v. Arellano,* 291 F.3d 1032, 1035 (8th Cir. 2002); *United States v. Mara*, 523 F.3d 1036, 1038 (9th Cir. 2008); *United States v. Prince,* 204 F.3d 1021, 1023–24 (10th Cir. 2000); *United States v. Pace,* 17 F.3d 341, 343–44 (11th Cir. 1994); *but see United States v. Morrison*, 983 F.2d 730, 733–35 (6th Cir. 1993).

responsibility, a non-exhaustive list that narrows that universe can hardly be said to expand it.

### C. The Commentary Invokes the Commission's Substantive Expertise

At *Nasir*'s final step, we ask whether an otherwise reasonable interpretation of an ambiguous Guideline is entitled to "controlling weight." 17 F.4th at 471. To make that assessment, we consider whether the interpretation is the Commission's "official position,"[6] "in some way implicates its substantive expertise," and "reflect[s] fair and considered judgment" such that it is not simply a "convenient litigating position." *Id.* (citations omitted).

Contrary to Mercado's suggestion, *Adair* is not controlling as to the two comments we consider today. In that case, we considered whether the commentary for § 3E1.1(b) was entitled to *Auer* deference. 38 F.4th at 359–60. Section 3E1.1(b) provides for an additional one-point reduction if a defendant has, among things, "assisted authorities in the investigation or prosecution of his own misconduct," but only "upon motion of the government" requesting a reduction on that basis. U.S.S.G § 3E1.1(b). Application Note 6 of the commentary purports to limit the Government's discretion under the Guideline, stating that the Government "should not withhold such a motion based on interests not identified in § 3E1.1, such as whether the defendant agrees to waive his or her right to appeal." U.S.S.G § 3E1.1 cmt. n.6. In concluding that Application Note 6 should "not receive controlling deference," we reasoned that the Commission's attempts to confine the Government's prosecutorial discretion—based on its read of the Guideline's "upon motion of the government" language—did "not invoke its data-driven expertise on criminal sentencing," but rather engaged in a "legal interpretation" and an "application of the canons of construction." *Adair*, 38 F.4th at 360. Put differently, we found that the Commission's position on whether particular

---

[6] Mercado does not argue that the commentary is anything other than the Sentencing Commission's official position, and we have seen nothing to indicate that the Commission has issued any countervailing statements or positions.

words or phrases in the Guideline limited the Government's discretion to withhold a given motion had little connection to substantive sentencing concerns.

The same cannot be said here. At bottom, this case requires us to determine what evidence a district court may consider in assessing whether a defendant has genuinely accepted responsibility for his actions. More precisely, the question is whether a defendant's subsequent crimes are in some way connected to and indicative of his lack of remorse for previous ones. That sort of determination is squarely within the Sentencing Commission's "bailiwick." *Nasir*, 17 F.4th at 471. The Commission has significant "data driven" expertise regarding how successive crimes relate to one another and routinely releases in-depth reports related to "Recidivism and Federal Sentencing Policy" and "Criminal History and Recidivism of Federal Offenders." *See, e.g., Recidivism*, U.S.S.C., available at https://www.ussc.gov/topic/recidivism (last visited July 24, 2023). It is therefore optimally positioned to opine on what factors indicate that a defendant has or has not accepted responsibility for his past criminal activity, and whether "voluntary termination or withdrawal from criminal conduct or associations," U.S.S.G. § 3E1.1 cmt. n.1(B), should bear on the "legitimate societal interests," Opening Br. 20, underlying a § 3E1.1(a) reduction.

In light of that expertise, the Commission's interpretation of the Guideline is entitled to *Auer* deference, and we will accord it controlling weight. *Nasir*, 17 F.4th at 471.[7]

---

[7] Even if the Commission's interpretation were not entitled to controlling weight, however, we would be free to consider its persuasive force, *see Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944) (holding that "the rulings, interpretations and opinions of the Administrator" of the statute in question, "while not controlling upon the courts by reason of their authority," were nonetheless available for guidance to the extent they had the "power to persuade"), and we would find it persuasive enough to follow here.

13

D.      The District Court Did Not Commit Clear Error

Mercado bore the burden of establishing by a preponderance of the evidence that he was entitled to a downward adjustment under § 3E1.1(a), *United States v. Boone*, 279 F.3d 163, 193 (3d Cir. 2002), and the District Court concluded that he had not carried it.  We review that denial for clear error, affording the District Court "great deference" because it was "in a unique position to evaluate a defendant's acceptance of responsibility."  *Id.* (citation omitted); *United States v. Richards*, 674 F.3d 215, 219 n.2 (3d Cir. 2012) (citing *United States v. Booker*, 543 U.S. 220, 259–60 (2005) (Stevens, J., Concurring)).

Under that deferential standard, we cannot say that the District Court erred in concluding Mercado's post-plea conduct did not demonstrate genuine acceptance of responsibility for his offense.  Following his plea, Mercado repeatedly used cocaine, failed to attend substance abuse treatment, and failed to submit to random drug testing, all of which were conditions of his pre-sentencing release.  Courts have routinely upheld the denial of a § 3E1.1(a) adjustment for similar or less culpable post-plea conduct, *see, e.g.*, *McDonald*, 22 F.3d at 144; *United States v. Olvera,* 954 F.2d 788, 793 (2d Cir. 1992); *United States v. Lagasse*, 87 F.3d 18, 25 (1st Cir. 1996), and we will do so for the disturbing pattern of post-plea misconduct here.

## III.   Conclusion

For the foregoing reasons, we will affirm the judgment of the District Court.

14