**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-2869
_____

UNITED STATES OF AMERICA

v.

RYAN LAMAR FREEMAN,
also known as Suel,

Appellant
_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. Criminal No. 1-21-cr-00055-001)
District Judge: Honorable Colm F. Connolly
_____

Argued on July 11, 2024

Before: BIBAS, FREEMAN, and ROTH, *Circuit Judges*

(Opinion filed: October 8, 2024)

Mary K. Healy  [**Argued**]
Office of Federal Public Defender
800 King Street, Suite 200
Wilmington, DE 19801
        *Counsel for Appellant*

Kevin Pierce
Jesse S. Wenger  [**Argued**]
Office of United States Attorney
1313 N Market Street
Hercules Building, Suite 400
Wilmington, DE 19801

     *Counsel for Appellee*

_____

OPINION[*]
_____

**FREEMAN**, *Circuit Judge*.

Ryan Freeman pleaded guilty to conspiracy to deal in firearms without a license and knowingly making false statements to federal agents.  At sentencing, the District Court applied an obstruction-of-justice adjustment and a firearm-trafficking enhancement to Freeman's base offense level.  Freeman now appeals his sentence, arguing that the Court erred by applying those two Sentencing Guidelines provisions.  Although the Court correctly applied the obstruction-of-justice adjustment, the firearm-trafficking enhancement was inapplicable here.  For the reasons discussed below, we will vacate the judgment of sentence and remand for resentencing.

**I**

During a traffic stop in January 2021, Delaware state police searched Freeman's car and discovered ten firearms.  They arrested Freeman and his passenger, Shaquayvis

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Asberry. Freeman told Asberry that he would take responsibility for the firearms, and he later told federal agents that all ten firearms belonged to him. As the investigation progressed, the agents discovered that was not true—Freeman and Asberry had been working together to buy and sell firearms. Freeman later pleaded guilty to conspiring to deal in firearms without a license in violation of 18 U.S.C. § 371, and knowingly and willfully making material false statements and representations to federal agents in violation of 18 U.S.C. § 1001(a)(2).

At his sentencing, Freeman objected to the draft Presentence Investigation Report on two grounds relevant to this appeal. First, he argued that the obstruction-of-justice Guideline should not apply. That Guideline states:

> If (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense, increase the offense level by 2 levels.

U.S.S.G. § 3C1.1. The District Court concluded that the Guideline's text is unambiguous, and that Freeman's conduct constituted an attempt to obstruct justice. It declined to defer to the commentary as Freeman urged, and it applied the adjustment over Freeman's objection.

Second, Freeman objected to the firearm-trafficking enhancement. The Guideline in effect on the date of Freemans's sentencing stated, in its entirety: "If the defendant engaged in the trafficking of firearms, increase by 4 levels." U.S.S.G. § 2K2.1(b)(5)

3

(2006).[1]  At first, the District Court concluded that the term "trafficking" is ambiguous, so it turned to the Guideline's commentary.  The Court found insufficient evidence that Freeman's conduct satisfied the Guideline's commentary, so it sustained Freeman's objection and concluded that the firearm-trafficking Guideline was inapplicable.

Later, however, the Court reversed course.  It determined that the term "trafficking" is unambiguous.  App. 257 ("Trafficking is exactly that, it's trafficking.  It's trading, selling[,] purchasing and selling, importing and exporting, engaging in transactions to move, in this case, firearms.").  Accordingly, it applied the Guideline without considering the commentary.  Nonetheless, it stated that if it was incorrect and deference to the commentary was warranted (making the Guideline inapplicable to Freeman), it "would grant an upward departure or vary [upward]" to account for Freeman's "extensive" trafficking of firearms.  App. 269.

The Court calculated a Guidelines range of 46 to 57 months' imprisonment, and then imposed a sentence of 54 months' imprisonment.  Freeman timely appealed the judgment of sentence.

---

[1] As of November 1, 2023, that version is no longer in effect.  U.S.S.G. App. C, amend. 819 (Nov. 1, 2023).

**II**[2]

When questions arise about whether to apply Sentencing Guidelines commentary,

we use the three-step process set forth in *United States v. Nasir*, 17 F.4th 459 (3d Cir.

2021) (en banc) (applying the framework laid out in *Kisor v. Wilkie*, 588 U.S. 558 (2019)

to the Sentencing Guidelines).  First, we ask whether the Guideline in question is

ambiguous.  *Id.* at 471.  If the Guideline is unambiguous, we proceed no further and

"simply disregard the commentary."  *United States v. Mercado*, 81 F.4th 352, 356 (3d

Cir. 2023).  However, if the Guideline remains genuinely ambiguous after exhausting all

the traditional tools of construction, we proceed to step two and consider whether the

corresponding commentary is reasonable.  *Nasir*, 17 F.4th at 471.  If the commentary is

reasonable, we continue to step three and ask whether the commentary is entitled to

controlling weight.  *Id.*

A

The obstruction-of-justice Guideline, U.S.S.G. § 3C1.1, is unambiguous.

Therefore, the District Court correctly disregarded the commentary and applied the

upward adjustment.

The Guideline imposes a two-level increase if "the defendant willfully obstructed

or impeded, *or attempted to obstruct or impede*, the administration of justice with respect

---

[2] The District Court had jurisdiction under 18 U.S.C. § 3231.  We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).  We exercise de novo review over the District Court's interpretation of the Sentencing Guidelines.  *United States v. Nasir*, 17 F.4th 459, 468 (3d Cir. 2021) (en banc).

to the investigation, prosecution, or sentencing of the instant offense" or a closely related offense. U.S.S.G. § 3C1.1 (emphasis added). The District Court found that Freeman made false statements to the agents about the firearms in his vehicle in an attempt to obstruct the investigation into his instant offense. Freeman does not dispute the Court's factual findings. He nonetheless argues that various terms in the obstruction-of-justice Guideline are vague and that the Court should have deferred to the commentary. We disagree.

The terms had settled meanings when the Guideline was promulgated in 1991. An "attempt" required a "substantial step in a course of conduct planned to culminate in [the] commission of the crime." Model Penal Code § 5.01(1)(c); *see United States v. Resendiz-Ponce*, 549 U.S. 102, 107 (2007) (favorably citing this section of the Model Penal Code).[3] And "impede" and "obstruct" meant to hinder, frustrate, or interfere.[4]

---

[3] *See also Attempt*, Webster's Third New International Dictionary (1986) (defining "attempt" as "mak[ing] an effort to do, accomplish, solve or effect"); *Attempt*, Black's Law Dictionary (6th ed. 1990) (defining "attempt" as "an intent combined with an act falling short of the thing intended," and in the criminal context, "[a]n intent to commit a crime coupled with an act taken toward committing the offense").

[4] *Impede*, Webster's Third New International Dictionary (1986) ("[T]o interfere with or get in the way of the progress of, . . . hold up, . . . block, [and] detract from[.]"); *Impede*, Black's Law Dictionary (6th ed. 1990) ("[T]o obstruct; hinder; check; delay."); *Obstruct*, Webster's Third New International Dictionary (1986) (defining "obstruct" as "com[ing] in the way of" and "plac[ing] obstacles in the way"); *Obstruct*, Black's Law Dictionary (6th ed. 1990) ("To hinder or prevent from progress, check, stop, also to retard the progress of, make accomplishment of difficult and slow . . . to interpose impediments to the hindrance or frustration of some act or service[.]").

6

"Administration" was the practice of carrying out official duties,[5] and "obstructing justice" meant to interfere with those who are administering justice.[6]

There is no ambiguity in the Guideline's text, so the District Court correctly disregarded the commentary. Given the Court's factual findings, it properly concluded that Freeman's conduct constituted an attempt to obstruct or impede the administration of justice that warranted the adjustment.

B[7]

Unlike the obstruction-of-justice Guideline, the firearm-trafficking Guideline in place at the time of Freeman's sentencing was genuinely ambiguous. The District Court erred by declining to defer to the corresponding commentary, which clarified that the enhancement was inapplicable to Freeman's conduct. Because we cannot conclude that the error was harmless, we will remand for resentencing.

1

At *Nasir* step one, the traditional tools of construction reveal genuine ambiguity in the firearm-trafficking Guideline. "We start with the plain text and presume that words

---

[5] *Administration*, Black's Law Dictionary (6th ed. 1990) ("Management or conduct of an office or employment; the performance of the executive duties of an institution[.]"); *cf. Administration*, The New Webster's Dictionary (1990) ("[T]he art or practice of carrying out a policy in government[.]").

[6] *Obstructing Justice*, Black's Law Dictionary (6th ed. 1990) ("The term applies . . . to obstructing the administration of justice in any way—as by hindering witnesses from appearing, assaulting process server, influencing jurors, obstructing court orders or criminal investigations.").

[7] Judge Bibas dissents from sections II.B and II.C of this opinion. In his view, the word "trafficking" unambiguously includes Freeman's buying and selling guns without a license, regardless of who was buying them from him.

carry their ordinary meaning." *United States v. Caraballo*, 88 F.4th 239, 246 (3d Cir. 2023).

The Guideline in effect during Freeman's sentencing stated: "If the defendant engaged in the trafficking of firearms, increase by 4 levels." U.S.S.G. § 2K2.1(b)(5) (2006). But the word "trafficking" had multiple meanings. It meant engaging in transactions but not necessarily illicit transactions, and its definitions said nothing about mental state.

When the Guideline was adopted, Merriam-Webster's Collegiate Dictionary defined "traffic" both as "import and export trade[;] the business of bartering or buying and selling"; and as "illegal or disreputable usu[ally] commercial activity." *Traffic*, Merriam-Webster's Collegiate Dictionary (11th ed. 2003). Black's Law Dictionary defined "traffic" only as "trad[ing] or deal[ing] in (goods, esp[ecially] illicit drugs or other contraband)." *Traffic*, Black's Law Dictionary (8th ed. 2004). Absent clarity on the meaning of "trafficking" from contemporary dictionary definitions, we must draw on other tools in our legal toolkit.[8]

Turning to the history of the Guideline, section 2K2.1(b)(5) has undergone three relevant changes. In 1991, the Guideline required "knowledge, intent, or reason to believe that [the firearm] would be used or possessed in connection with another felony offense." U.S.S.G. § 2K2.1(b)(5) (1991). Then, in 2006, the Sentencing Commission

---

[8] The structure of this terse Guideline does not aid our interpretation. The parties have relied on the Guideline's history to discern its purpose, so we will do the same.

8

removed that language from the Guideline's text and placed similar language in the commentary, *see* U.S.S.G. App. C, amend. 691 (Nov. 1, 2006), leaving us with the one-sentence Guideline in effect at the time of Freeman's sentencing. The commentary to the 2006 version—but not the Guideline's text—provided that the firearm-trafficking enhancement applied if the defendant "transported, transferred, or otherwise disposed of two or more firearms to another individual" and "knew or had reason to believe that such conduct would result in the transport, transfer, or disposal of a firearm to an individual . . . whose possession or receipt of the firearm would be unlawful[,] or . . . who intended to use or dispose of the firearm unlawfully." *Id.* at cmt. n.13(A) (2006).

In late 2023, the Commission again amended the Guideline (this time at Congress's directive) to a multi-part provision that omits the word "trafficking" altogether, and instead specifically delineates the actions and mental state required for the enhancement to apply. *See* U.S.S.G. App. C, amend. 819 (Nov. 1, 2023); Bipartisan Safer Communities Act, Pub. L. 117-159, 136 Stat. 1313 (2022); U.S.S.G. § 2K2.1(b)(5) (2023).[9]

---

[9] The current version of the Guideline provides:

> (5) (Apply the Greatest) If the defendant—
>
>> (A) was convicted under 18 U.S.C. § 933(a)(2) or (a)(3), increase by 2 levels;
>>
>> (B) (i) transported, transferred, sold, or otherwise disposed of, or purchased or received with intent to transport, transfer, sell, or otherwise dispose of, a firearm or any ammunition knowing or having reason to believe that such conduct would result in the receipt of the firearm or ammunition by an individual who (I) was a prohibited person; or (II) intended to use or

9

The history of the Guideline demonstrates that the 2006 version was genuinely ambiguous. That the Sentencing Commission chose in 2023 to reincorporate into the Guideline's text the information previously contained in the commentary suggests that the 2006 Guideline on its own was insufficient to adequately convey when the enhancement should apply.

2

Because the firearm-trafficking Guideline is genuinely ambiguous, we turn to *Nasir* step two: assessing whether the commentary is reasonable. We conclude that it is.

A Guideline's commentary is reasonable when it is within "the outer bounds of permissible interpretation" of the Guideline. *Nasir*, 17 F.4th at 471 (quoting *Kisor*, 588

---

dispose of the firearm or ammunition unlawfully; (ii) attempted or conspired to commit the conduct described in clause (i); or (iii) received a firearm or any ammunition as a result of inducing the conduct described in clause (i), increase by 2 levels; or

(C) (i) transported, transferred, sold, or otherwise disposed of, or purchased or received with intent to transport, transfer, sell, or otherwise dispose of, two or more firearms knowing or having reason to believe that such conduct would result in the receipt of the firearms by an individual who (I) had a prior conviction for a crime of violence, controlled substance offense, or misdemeanor crime of domestic violence; (II) was under a criminal justice sentence at the time of the offense; or (III) intended to use or dispose of the firearms unlawfully; (ii) attempted or conspired to commit the conduct described in clause (i); or (iii) received two or more firearms as a result of inducing the conduct described in clause (i), increase by 5 levels.

Provided, however, that subsection (b)(5)(C)(i)(I) shall not apply based upon the receipt or intended receipt of the firearms by an individual with a prior conviction for a misdemeanor crime of domestic violence against a person in a dating relationship if, at the time of the instant offense, such individual met the criteria set forth in the proviso of 18 U.S.C. § 921(a)(33)(C).

10

U.S. at 576). We give commentary no weight when it expands the definition of a term in the Guideline. *Mercado*, 81 F.4th at 356.

The commentary to the firearm-trafficking Guideline states that the enhancement applies if the defendant "knew or had reason to believe that such conduct would result in the transport, transfer, or disposal of a firearm to an individual . . . whose possession or receipt of the firearm would be unlawful; or . . . who intended to use or dispose of the firearm unlawfully." U.S.S.G. § 2K2.1(b) cmt. n.13(A) (2006). It defines an "[i]ndividual whose possession or receipt of the firearm would be unlawful," in relevant part, as one who "has a prior conviction for a crime of violence, a controlled substance offense, or a misdemeanor crime of domestic violence." *Id.* at cmt. n.13(B).

This commentary reflects the text of the predecessor and successor versions of the Guideline. Thus, it falls within the outer bounds of permissible interpretation. Additionally, it narrows the definition of "trafficking of firearms" by clarifying that the Guideline applies only to illicit trafficking and by imposing a *mens rea* requirement. Because this commentary reasonably interprets an ambiguous provision, we proceed to *Nasir* step three.

3

At step three, we conclude that the character and context of the commentary entitles it to controlling weight. We defer to Guideline commentary when it represents the Sentencing Commission's "official position," "implicate[s] its substantive expertise," and "reflect[s] fair and considered judgment." *Nasir*, 17 F.4th at 471 (quoting *Kisor*, 588 U.S. at 577, 579).

11

There is no dispute that the commentary to the firearm-trafficking Guideline is the Sentencing Commission's official position and implicates the Commission's substantive expertise. The commentary also comports with the previous iteration of the Guideline, which indicates that it reflects fair and considered judgment. It is therefore entitled to deference.

## C

Deferring to the commentary, the firearm-trafficking enhancement would apply only if the government proved that Freeman knew or had reason to believe that the individual receiving the firearm would use or possess it unlawfully. The District Court found (and the parties do not contest) that Freeman's conduct did not satisfy the commentary's requirements. Thus, the District Court erred when it applied the enhancement to Freeman's sentence.

An error in applying the Guidelines is harmless if "the district court *explicitly states* that it would have imposed the *same* sentence even under the correct Guidelines range." *United States v. Raia*, 993 F.3d 185, 195 (3d Cir. 2021) (emphases added). Here, the District Court noted that if the enhancement did not apply to Freeman's sentence, it "would grant an upward departure or vary [upward]" to account for the trafficking in this case. App. 269. But it did not explicitly state that it would have imposed the same sentence, so we cannot conclude that the error was harmless.

\*       \*       \*

For the reasons discussed above, we will vacate the judgment of sentence and remand to the District Court for it to resentence Freeman without applying the firearm-trafficking enhancement.