**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 25-2179
_____

UNITED STATES OF AMERICA

v.

RUBEN DARIO GUERRERO GRIMALDOS,
Appellant

_____

On Appeal from the United States District Court for the
District of New Jersey
(District Court No. 2:25-cr-00401-001)
District Judge: Honorable Jamel K. Semper

_____

Argued September 15, 2025

Before: RESTREPO, McKEE and RENDELL, *Circuit Judges*.

(Filed: September 24, 2025)

Shaiba Rather
Rahul K. Sharma
Office of Federal Public Defender
1002 Broad Street
Newark, NJ 07102

Timothy M. Shepherd [ARGUED]
Office of Federal Public Defender
22 S Clinton Avenue
Station Plaza #4, 4th Floor
Trenton, NJ 08609
    *Counsel for Appellant*

Mark E. Coyne
John F. Romano [ARGUED]
Office of United States Attorney
970 Broad Street
Room 700
Newark, NJ 07102
    *Counsel for Appellee*

_____

OPINION[*]

_____

**RENDELL**, *Circuit Judge*.

Appellant Ruben Dario Guerrerro Grimaldos ("Guerrero") asks us to vacate his above-guidelines sentence for immigration fraud and remand his case for resentencing. He urges that the District Court erred in denying the two-point acceptance of responsibility reduction to his offense level under U.S.S.G. § 3E1.1(a) and, separately, imposed a sentence that was procedurally and substantively unreasonable. We agree that the District Court should have applied § 3E1.1's two-point reduction and will vacate and remand on that basis. We will also briefly address procedural and substantive concerns we have with the initial sentencing proceedings so that the court can address those concerns on remand.

I.

A.

Guerrero came to the United States lawfully in 2022 on a conditional resident visa. In April 2024, before his visa expired, he filed a Petition to Remove Conditions on

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Residence (Form I-751), which would have allowed him to remain in the United States until 2029. The Form I-751 asks: "Have you ever been arrested, detained, charged, indicted, fined, or imprisoned for breaking or violating any law or ordinance (excluding traffic regulations), or committed any crime which you were not arrested in the United States or abroad?" App. 49. Guerrero answered "no" on his form, *id.*, but the truthful answer was "yes." In February 2024 (two months before he filed his petition), Guerrero was arrested and charged with various state offenses stemming from him filming his fifteen-year-old stepdaughter while she was nude. He pleaded guilty to one count of endangering the welfare of children by engaging in sexual conduct with a child in violation of N.J. Rev. Stat. § 2C:24-4(a)(1). He had a separate charge for initially refusing to give his cell phone to law enforcement, but the state agreed to drop that charge in exchange for his guilty plea. The state court elected to impose a sentence of lifetime parole and ordered that Guerrero comply with the reporting and registration requirements under Megan's law and cease contact with the victim and the victim's family, among other conditions.

Guerrero was charged with immigration fraud in violation of 18 U.S.C. § 1546(a) and arrested in April 2025. According to the statement of the arresting officer, a group of U.S. Immigration and Customs Enforcement ("ICE") agents approached Guerrero on the street outside his residence. At least one of the agents was wearing an ICE badge and a ballistic vest with "Police" and "ICE" markings. The agent called Guerrero's name, and Guerrero "observed [the agent] and attempted to flee back into his residence." App. 99. The officer pursued Guerrero and "struggled to control" him, which caused them both to

3

fall down 12 stairs into Guerrero's basement apartment. *Id.* They both suffered injuries from the fall.

B.

About two and a half weeks after his arrest and initial appearance, Guerrero signed a plea agreement with the Government, under which he pled guilty to the immigration fraud offense. Prior to sentencing, Guerrero and the Government calculated his guideline range at zero to six months.[1] Guerrero had been in custody for 53 days, and, at sentencing, asked for a time served sentence. His sentencing memorandum raised two arguments. The first emphasized that his history and characteristics (one of the 18 U.S.C. § 3553(a) factors a court must consider in imposing a sentence, *see* § 3553(a)(1)) "present a man who is hardworking, dutiful, and far better than his state conviction." App. 101. The second noted that, of defendants facing an immigration fraud charge with a final offense level six and criminal history category I, 16% did not receive a sentence of imprisonment. Of those that *did* receive a sentence of imprisonment, the average sentence was three months. Thus, he urged that a time-served sentence was appropriate to avoid unwarranted sentencing disparities (another one of the § 3553(a) factors, *see* § 3553(a)(6)). Guerrero's attorney made similar arguments at sentencing, urging that

---

[1] The parties agreed that his base offense level was eight, and he was entitled to a two-level reduction for acceptance of responsibility, bringing his total offense level to six. The 2024 state charge was his only prior conviction, and because he received a non-custodial sentence of lifetime parole, he received one point for that conviction and fell into criminal history category I. The court waived the preparation of the presentence report upon Guerrero's request, which emphasized his "low advisory guideline range of 0-6 months and that Mr. Guerrero Grimaldos ha[d] already spent 43 days incarcerated" (53 days as of the June 17, 2025 sentencing hearing). App. 15.

Guerrero was eager to resume work,[2] as his mother's financial situation had grown dire since his incarceration, and that he felt remorse for his wrongdoing. Guerrero testified that he felt "constant deep regret" over his state court conviction, which motivated him "to seek out spiritual help" and become more involved in his church. App. 164.[3] He explained that he did not disclose his prior offense on his Form I-751 out of "fear of remaining illegal in this country and not to be able to continue to work to support [his] mother," and that he "committed the error . . . [t]hinking they wouldn't realize it." App. 165–66. He emphasized that the "period of time" following his offense has "been not only difficult for me, but for my mother," that "all this time has allowed [him] to rethink [his] life." App. 166. Finally, he "promise[d the court] that [his] name will not show up again in any other crime of any kind in any country." App. 166.

For its part, the Government requested a top-of-guidelines, six-month sentence. It urged that six months was appropriate given Guerrero's criminal history and "concerning history of resisting authority." App. 42. The Government pointed to Guerrero's attempt to flee from the arresting ICE agents, which caused the arresting officer to suffer serious injuries.[4] The Government also noted that, when he was being prosecuted for his sex

---

[2] Given that he will face deportation upon completion of his sentence, Guerrero informed the court that he plans to go to Spain with his partner to find work to continue to support his mother, who lives in Colombia and is financially dependent on him.

[3] Guerrero's pastor also testified to Guerrero's "spiritual growth." App. 163.

[4] In the plea agreement, the Government reserved the right to argue for a two-point enhancement under U.S.S.G. § 3C1.2 for creating a substantial risk of death or serious bodily injury to another person while fleeing from a law enforcement officer. At sentencing, however, the Government elected not to argue for the § 3C1.2 enhancement, as it was "unable to conclude that Mr. Guerrero's conduct [i.e., walking away from the ICE agents] was reckless or that it created a substantial risk." App. 151.

offense in February 2024, Guerrero refused to hand his phone over during the execution of a search warrant. So while Guerrero had only one criminal history point which placed him in the lowest criminal history category, the Government maintained that Guerrero's criminal history "is on the more severe side of individuals who have only one criminal history point. And that merits a sentence at the top of the advisory sentencing guidelines." App. 148.

At the sentencing hearing, the District Court began by calculating Guerrero's guideline range. He agreed with the parties that Guerrero's criminal history category was I and his base offense level was eight. Without explanation, the court declined to apply the two-point reduction for acceptance of responsibility.[5] Next, the court explained that it was "not inclined to exercise [its] discretion to depart from the guidelines." App. 146. Finally, it considered the relevant 18 U.S.C. § 3553(a) factors. The District Court referenced Guerrero's state charges but took care to emphasize that "the court is not factoring that in as a punishment." App. 169. Instead, it concluded that Guerrero "didn't draw any lessons" from his "significant state offenses" when he lied on his immigration forms and "evaded the police" at the time of his arrest. App. 169–70. Accordingly, the court accorded "great weight" to factors § 3553(a)(2)(B) and (C), that is, the need to afford adequate deterrence to criminal conduct and the need to protect the public from further crimes of the defendant. App. 171. The District Court listed the other § 3553(a) factors, but did not substantively discuss them as applied to Guerrero's case. Later in the

---

[5] As detailed below, Guerrero objected to this ruling at the end of the sentencing hearing, and the court granted the reduction, then ultimately denied it once more.

6

proceeding, when it came time to impose a sentence, in light of the "great weight" it accorded factors § 3553(a)(2)(B) and (C), the court varied upwards, finding that Guerrero's "offense level should be at ten," and imposing a sentence of 12 months. App. 171.

Guerrero's counsel objected to the court's refusal to apply the two-point reduction for acceptance of responsibility, given his prompt guilty plea, expression of remorse, and commitment to spiritual growth. The Government agreed that the reduction should apply. Then, the following exchange occurred:

> THE COURT: All right. Having heard the party's view with respect to two points, the court will find that two points applicable. Although, given the court's finding with respect to the 3553(a) the court still believes that a sentencing range within offense level ten is appropriate here. And so I will sentence in accordance with what I just laid out. But I will give you your two points, counsel. Anything else?
>
> [Guerrero's counsel]: And the sentence will be to 12 months Your Honor or—
>
> THE COURT: Twelve months.
>
> . . .
>
> [Probation]: The total offense level will be eight or it will be ten?
>
> THE COURT: I will make it—well, hold on for one moment.
>
> . . .
>
> Give me a minute. I'm doing some quick math.
>
> (Brief pause.)
>
> . . .

7

No. I'm sorry, counsel, I want to amend what I previously said about the two points. I entertained the positions of the parties, but the facts as I see them, the defendant's behavior during the arrest—I understand the point that you made with respect to the timing and the government's position, but I see no reason to disturb it. I'm going to keep my sentence the way it is. I'm going to keep the offense level at 12—at 10. And I'm going to keep the sentence at 12 months.

App. 178–79.

Guerrero now asks us to vacate his sentence and remand his case for resentencing. He urges that the District Court committed three independent errors: first, it refused to apply the acceptance of responsibility reduction; second, it varied upwards without adequate explanation or consideration of the need to avoid unwarranted sentencing disparities; and finally, it imposed a substantively unreasonable sentence by affording undue weight to Guerrero's state court conviction.

## II.[6]

### A.

Guerrero urges that the District Court committed legal and factual errors when it declined to apply the acceptance of responsibility reduction. We review the District Court's legal interpretations of the guidelines de novo, and its factual determinations for clear error. *United States v. Ceccarani*, 98 F.3d 126, 129 (3d Cir. 1996).

Section 3E1.1(a) of the Sentencing Guidelines instructs sentencing courts to reduce a defendant's offense level by two points if the defendant has "clearly

---

[6] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

8

demonstrate[d] acceptance of responsibility for his offense." U.S.S.G. § 3E1.1(a). The defendant must show by a preponderance of the evidence that he is entitled to the reduction, and, in determining whether the defendant has satisfied this burden, the sentencing court must "assess the totality of the situation." *United States v. Harris*, 751 F.3d 123, 126 (3d Cir. 2014).

The only explanation the District Court gave for ultimately not applying the reduction was "the defendant's behavior during the arrest." App. 178. Guerrero contends that the guidelines do not permit a court to consider pre-indictment conduct in evaluating acceptance of responsibility, and that it was legal error for the court to do so here. "As a general matter, it is true that courts cannot go back limitlessly in time in assessing acceptance of responsibility." *United States v. McLaughlin*, 378 F.3d 35, 41 (1st Cir. 2004). While we have said that post-indictment conduct can be considered in assessing acceptance of responsibility, we have not addressed the outer temporal bounds of the reduction. *See Ceccarani*, 98 F.3d at 128, 130 (affirming denial of reduction based on post-indictment conduct); *United States v. Mercado*, 81 F.4th 352, 361 (3d Cir. 2023) (affirming denial of reduction based on "disturbing pattern of post-plea misconduct").

Guerrero urges us to adopt our Sister Circuit's bright-line rule, whereby courts assessing acceptance of responsibility may consider "any post-offense criminal conduct" that "occurs after a defendant can be said to be on notice that federal prosecutors have demonstrated an interest in his conduct." *United States v. McCarthy*, 32 F.4th 59, 65 (1st Cir. 2022). Our Sister Circuits have determined that a defendant is "on notice" of federal prosecutors' "interest in his conduct" once prosecutors have filed federal charges. *Id.* at

9

64–65; *McLaughlin*, 378 F.3d at 41-42; *United States v. Wade*, 458 F.3d 1273, 1281 (11th Cir. 2006); *United States v. Jeter*, 191 F.3d 637, 639–40 (6th Cir. 1999), *abrogated on other grounds by Buford v. United States*, 532 U.S. 59 (2001).

We will leave the question of whether we should adopt this bright-line rule (and whether the filing of an indictment invariably represents the point at which a defendant is "on notice") for another day, because at the very least, we are confident that § 3E1.1 does not permit a court to deny the reduction based solely on a defendant's arrest conduct where, as here, the defendant has no notice of the offense for which he is being arrested. The text of § 3E1.1 states: "If the defendant clearly demonstrates acceptance of responsibility *for his offense*, decrease the offense level by 2 levels." U.S.S.G. § 3E1.1(a) (emphasis added). In order to accept responsibility "for his offense," a defendant must know what his offense is. Here, there is no indication that Guerrero knew that he was being arrested for immigration fraud. Even accepting the District Court's factual finding that Guerrero purposefully evaded the arresting ICE agents, it does not appear that he was on notice that they were approaching him—and were likely to charge him criminally— due to his misrepresentation on his Form I-751. *Cf. Michelson v. United States*, 335 U.S. 469, 482 (1948) (explaining that an arrest "happens to the innocent as well as the guilty"). Instead, he appeared to believe that they approached him because they sought to deport him. *See* App. 158 ("[Guerrero's] first thought was that, I'm here legally, let me go get my papers."); *cf. Noem v. Abrego Garcia*, 145 S. Ct. 1017, 1018 (2025) (noting the government's representation that noncitizen was removed as a result of "administrative error").

10

Our read accords with a central purpose of § 3E1.1: to encourage acceptance of responsibility and guilty pleas. *See Wade*, 458 F.3d at 1281; *Jeter*, 191 F.3d at 640. If fleeing arresting officers could be the basis for the denial of the acceptance of responsibility reduction, many defendants would be "deter[red] from pleading guilty and encourage[d] . . . to take their cases to trial," a result which is "contrary to [§ 3E1.1's] underlying purpose of reducing unnecessary trials and conserving resources." *Jeter*, 191 F.3d at 640.

Accordingly, we hold that the District Court committed legal error when it considered Guerrero's arrest conduct in assessing his entitlement to the acceptance of responsibility reduction. Because the court based its denial of the reduction entirely on Guerrero's arrest evasion,[7] it therefore erred as a matter of law in denying the reduction.

The Government urges that any error in the District Court's § 3E1.1 assessment was harmless error, because the court's denial of the reduction did not change Guerrero's zero-to-six-month guideline range. That is, at a criminal history category I, the guideline range is zero to six months regardless of whether the offense level is six (i.e., with the two-level reduction) or eight (without the reduction). But in homing in on the guideline range, the Government ignores the fact that the court varied upward from an offense level

---

[7] Indeed, we are hard pressed to identify any conduct besides the arrest evasion that could have led the court to deny the acceptance of responsibility reduction. Guerrero pled guilty less than three weeks after his arrest (which, in his counsel's view, was "the minimum time required to get discovery from the government, coordinate with a translator, make an appointment at Hudson County, and go over all of that information with Mr. Guerrero such that he fully understands it"), expressed his remorse for his actions, and had his pastor attest to his commitment to spiritual growth. App. 176.

eight to an offense level ten. Had it applied the acceptance of responsibility reduction, and started at an offense level six, we are uncertain whether the court would have deemed it appropriate to vary upwards by four offense levels as opposed to two. We therefore cannot "ascertain that the error was harmless." *United States v. Zabielski*, 711 F.3d 381, 389 (3d Cir. 2013). Moreover, the District Court "d[id] not explicitly state that the [denial of the reduction] had no effect on the sentence imposed." *Zabielski*, 711 F.3d at 389.

At bottom, we cannot say that this is the "rare case where we can be sure that an erroneous Guidelines calculation did not affect the sentencing process and the sentence ultimately imposed." *United States v. Raia*, 993 F.3d 185, 195 (3d Cir. 2021) (quoting *United States v. Langford*, 516 F.3d 205, 219 (3d Cir. 2008)); *see also Langford*, 516 F.3d at 220 ("[I]t is not our role to say that the sentencing judge would consider the sentence he gave . . . to be appropriate" absent the erroneous guidelines calculation). On remand, the District Court should apply § 3E1.1's two-point reduction in calculating Guerrero's sentence.

### B.

While our conclusion as to § 3E1.1 is enough for vacatur and remand, we feel compelled to address the District Court's plain procedural error.[8] Our case law is clear

---

[8] The parties agree that at sentencing, Guerrero did not object to any of the procedural errors he now raises on appeal, so we apply plain error review. Fed. R. Crim. P. 52(b); *see United States v. Olano*, 507 U.S. 725, 734 (1993). For reversible plain error to exist, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) which seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Moreno*, 809 F.3d 766, 773 (3d Cir. 2016) (quoting *United States v. Tai*, 750 F.3d 309, 313–14 (3d Cir. 2014)). Because we are remanding Guerrero's case for resentencing based on § 3E1.1, we need not address whether the

that when a defendant raises a "colorable argument about the applicability of one of the § 3553(a) factors," the district court must "address that argument as part of its meaningful consideration of the sentencing factors." *United States v. Merced*, 603 F.3d 203, 215 (3d Cir. 2010) (quotation marks omitted). Indeed, we have emphasized:

> [A] district court's failure to analyze § 3553(a)(6) may constitute reversible procedural error, even where (as here) the court engages in thorough and thoughtful analysis of several other sentencing factors. . . . This is especially true if the sentence falls outside of the Guidelines, or where . . . a party specifically raises a concern about disparities with the district court and that argument is ignored.

*Id.* at 224.

Despite the fact that a colorable § 3553(a)(6) argument regarding sentencing disparities featured prominently in Guerrero's sentencing memorandum, the District Court's only mention of that factor was a "rote recitation of § 3553(a)(6)," which we have held is "insufficient to permit us to review the Court's resolution of [a defendant]'s disparity arguments." *United States v. Begin*, 696 F.3d 405, 414 (3d Cir. 2012). Thus, the District Court committed an error that was plain in light of controlling precedent. Upon resentencing, the court should meaningfully consider Guerrero's § 3553(a)(6) arguments.

We also feel compelled to note our discontent over the court's discussion of Guerrero's prior state offense. The sentencing transcript is littered with references to that offense. Though the court emphasized that it was not sentencing Guerrero for that

District Court's errors impacted the outcome or seriously impacted the integrity of the proceedings. We merely discuss the court's errors here to ensure that they are remedied on remand.

13

offense,[9] those repeated assurances call to mind the words of Shakespeare: "The lady doth protest too much, methinks." *Hamlet,* act 3, sc. 2, line 242. Moreover, the fact that the court included supervised release conditions specifically related to Guerrero's state offense and called Guerrero "someone that has targeted children" and "a danger to the community," indicates that his federal sentence *was* significantly impacted by the state offense. App. 170–71.

Guerrero was sentenced in state court for his sexual conduct charge, and his guideline range takes that criminal conduct into account. As we have noted, the average sentence for the federal offense in question is three months, and the Government's requested sentence was six months. We suggest that the District Court reconsider whether Guerrero is truly deserving of a year in prison for this offense. While the District Court certainly can vary from the guidelines, he should sentence Guerrero only for immigration fraud. As the Sixth Circuit aptly explained:

> Section 3553(a) is . . . not an excuse for a district court to subject a defendant to, what is in essence, plenary resentencing for his prior offenses—especially when those offenses bear no similarity to the instant offense. . . . Otherwise, a defendant could be perpetually punished for a prior conviction based solely on the district court's view of how 'troubling' that past conviction was.

*United States v. Lee*, 974 F.3d 670, 681 (6th Cir. 2020) (quoting sentencing transcript).

On remand, the court must sentence Guerrero for his federal offense.

---

[9] *See, e.g.*, App. 169 ("You were charged with numerous acts of child endangering, but the court is not factoring that in as a punishment for you."); *id.* ("[W]ithin a short period of time, we not only see the conduct for which you are not being sentenced for, that criminal conduct where a young girl was victimized"); App. 170 ("[T]he court is confronted with . . . an instance where you victimized a minor for which you are not being sentenced").

### III.

For these reasons, we will vacate the judgment of sentence and remand the case for resentencing.[10]

---

[10] We are mindful that Guerrero has been in custody since April 28, 2025. Had the District Court imposed the average three-month sentence for someone with Guerrero's offense and criminal history category, that sentence would have lapsed on July 28, 2025. Had it imposed the Government's recommended top-of-guideline sentence, it would be set to expire on October 28, 2025. Keeping in mind the age-old adage "justice delayed is justice denied," we expect that the District Court will take steps to ensure that Guerrero's resentencing hearing occurs as soon as practicable.